CHARLES D. SWIFT (TX State Bar No. 24091964) *(admitted to the United States District Court for the Eastern District of Michigan)*
    cswift@clcma.org
CHRISTINA JUMP (TX State Bar No. 00795828) *(application for admission to the United States District Court for the Eastern District of Michigan pending)*
    cjump@clcma.org
Constitutional Law Center for Muslims in America (CLCMA)
833 E. Arapaho Rd., Ste. 102
Richardson, TX 75081
Tel: (972) 914-2507; Fax: (972) 692-7454

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **KHALID M. TURAANI,** | |
| *Plaintiff,* | |
| vs. | CASE NO.:_____ |
| **JEFFERSON B. SESSIONS, III**, in his official capacity as Attorney General of the United States of America; **CHRISTOPHER A. WRAY**, in his official capacity as Director of the Federal Bureau of Investigation; **CHARLES H. KABLE, IV**, in his official capacity as Director of the Terrorist Screening Center; **THOMAS E. BRANDON**, in his official capacity as Deputy Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and **UNNAMED AGENT**, in his or her individual capacity as FBI agent, | CIVIL ACTION<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT** |
| *Defendants.* | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Khalid M. Turaani, by and through undersigned counsel, files this Original Complaint against Defendants Jefferson B. Sessions III, Christopher A. Wray, Charles H. Kable IV, Thomas E. Brandon, and Unnamed Agent, and in support thereof shows the following:

## INTRODUCTION

PLAINTIFF Khalid M. Turaani is a United States citizen domiciled in Michigan. In June 2017, Mr. Turaani attempted to exercise his Second Amendment right to bear arms by selecting a firearm to purchase at a local gun shop. Mr. Turaani was about to complete the purchase, but, when the store clerk ran his background check, the FBI called and notified the clerk not to complete the transaction because Mr. Turaani was under an active investigation by the FBI. Mr. Turaani remains deprived of the exercise of his Second Amendment right and was denied the exercise of this fundamental right without due process of law. Upon information and belief, these actions are due to his religion and national origin, which also inappropriately led to his inclusion on the No Fly List and/or a Watch List maintained by the Terrorist Screening Center. Independent of his status on any list, Mr. Turaani has also been denied equal protection of the laws of the United States, and has suffered harm due to defamation by Unnamed Agent.

## I.     Jurisdiction and Venue

1.  This is a civil action authorized by the Second Amendment, by way of the Due Process Clause of the Fifth Amendment; the Equal Protection Clause of the Fifth Amendment; and the Supreme Court case of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny.

2.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367, 1343, 2201, 2202 and Fed. R. Civ. P. 57.

3.  Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## II.     The Parties

4.  Plaintiff Khalid M. Turaani is a natural person and a citizen of the United States and of the state of Michigan.  Mr. Turaani has been a National Rifle Association ("NRA") cardholder since 2004, and is the owner of three firearms, the purchases of which are not at issue in this matter.

5.  Defendant Jefferson B. Sessions, III is the Attorney General of the United States and leads the Department of Justice ("DOJ"), a department of the United States that oversees the Federal Bureau of Investigations ("FBI") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Defendant Sessions is sued in his official capacity.

6. Defendant Christopher A. Wray is the Director of the FBI. The FBI maintains the National Instant Criminal Background Check System ("NICS"), and oversees the Terrorist Screening Center ("TSC"). Defendant Wray is sued in his official capacity.

7. Defendant Charles H. Kable, IV is the Director of the TSC. The TSC develops and maintains the federal government's consolidated Terrorist Screening Database ("TSDB"), which contains Watch Lists such as the No Fly List. Defendant Kable is sued in his official capacity.

8. Defendant Thomas E. Brandon is the Acting Director of the ATF. The ATF implements the Brady Handgun Violence Prevention Act ("Brady Act") jointly with the FBI by requiring Federal Firearms Licensees ("FFLs") to initiate criminal background checks through the NICS. Defendant Brandon is sued in his official capacity.

9. Defendant Unnamed Agent refers to one or more FBI agents who, upon information and belief, contacted Target Sports Orchard Lake after a NICS inquiry regarding Plaintiff. Defendant Agent is sued in his or her individual capacity.

### III.   **Statement of Relevant Facts**

#### a.   **The NICS**

10.   Plaintiff hereby alleges and incorporates all numbers in Sections I-II

above, by reference herein.

11.     The NICS was established by the Office of the Attorney General to implement procedures required under the Brady Act. 28 C.F.R. § 25.1; *see* 1993 Enacted H.R. 1025, 107 Stat. 1536, 103 P.L. 159.

12.     Under the Brady Act, the NICS must be contacted by any licensed importer, licensed manufacturer, or licensed dealer of firearms for information as to whether the transfer of a firearm to any person who is not licensed under 18 U.S.C. § 923 would be in violation of federal or state law.[1]

13. To access the NICS for the purpose of conducting a NICS background check, a FFL contacts the NICS Operations Center (by telephone or electronic access) or a Point of Contact ("POC").[2]

14.     As current law stands, Michigan does not use POCs, so FFLs contact the FBI directly for all firearm background checks.[3]

15.     The NICS Operations Center, after verifying the FFL number and assigning a NICS Transaction Number (NTN), searches the relevant

---

[1] *Id.*; *see also* FBI.gov, About NICS, https://www.fbi.gov/services/cjis/nics/about-nics (last visited Oct. 4, 2017).

[2] 28 C.F.R. § 25.6(a).

[3] *See* FBI.gov, About NICS.

databases and provides either a "proceed," "delayed," or "denied" response.[4]

16.     There are precautions to ensure the security and privacy of NICS information, such as only providing a response of "proceed," "delayed," or "denied," *without providing the details of any information about the transferee's records*.[5]

17.     If NICS staff does not make a final determination on a transaction, it automatically changes the status to "open," or, in other words, "proceed."[6]

18.     Defendant Agent told the store clerk that the transaction must be delayed because Plaintiff is under active government investigation, despite there being no need for the FFL to know that, and the prohibition stated in the regulations is against doing exactly that, thereby exceeding the responses permitted under applicable federal law.

**b. Plaintiff's Eligibility to Purchase a Firearm**

19.     Plaintiff incorporates all numbers in Section I-II, in addition to numbers 10-18 above.

20.     Under 18 U.S.C. § 922 (g), it is unlawful for a person to receive, possess, sell, or otherwise dispose of a firearm if:

---

[4] *See* 28 C.F.R. § 25.6 (c)(1).

[5] *See* 28 C.F.R. § 25.8(g)(2) (emphasis added).

[6] *See* GAO, *Gun Control and Terrorism,* Jan. 2005
http://www.gao.gov/new.items/d05127.pdf  (last visited Sept. 20, 2017).

   a.  They have been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

   b.  They are a fugitive from justice;

   c.  They are an unlawful user of or addicted to any controlled substance;

   d.  They have been adjudicated as a mental defective or who has been committed to a mental institution;

   e.  They are illegally an alien who is either illegally or unlawfully in the United States or was admitted under a nonimmigrant visa;

   f.  They were discharged from the Armed Forces under dishonorable conditions;

   g.  They renounced their U.S. citizenship;

   h.  They are subject to a court order that restrains them from harassing, stalking, or threatening an intimate partner of such conduct that would place an intimate partner in reasonable fear of bodily injury; or

   i.  They have been convicted of a misdemeanor of domestic violence.

21.   Plaintiff has no criminal convictions.

22.   Plaintiff is not a fugitive from justice.

23.   Plaintiff has never used or been addicted to any controlled substance.

24.   Plaintiff has never been adjudicated as a mental defective, and has never been committed to a mental institution.

25.   Plaintiff has been a naturalized United States citizen since August 19, 1994, and is in the United States lawfully.

26.   Plaintiff has never served in, and, accordingly, has never been discharged from the United States Army under dishonorable conditions.

27.   Plaintiff has never renounced his United States citizenship.

28.   Plaintiff is not and never has been subject to a protective order or any other court order restraining him from harassing, stalking, or threatening an intimate partner or child.

29.   Plaintiff has never been convicted in any court of a misdemeanor crime of domestic violence.

30.   Plaintiff is not and never has been under indictment for a crime.

31.   Plaintiff has no knowledge of any legal issues in the state of Michigan or elsewhere which would prevent him from purchasing a firearm.

32.   Congress has considered, but *not implemented*, several acts which would add persons in the TSDB to the list of prohibited gun owners.[7]

---

[7] *See* No Fly, No Buy Act of 2009, H.R. 2401, 111th Cong. (2009); *see also* No Guns for Terrorists Act of 2015, H.R. 4069, 114th Cong. § 1 (2015);  Denying Firearms and Explosives to Dangerous Terrorists Act of 2015, S. 551, H.R. 1076, 114th Cong. § 1 (2015); S. Amend. 2910 to S. Amend. 2874 to H.R. 3762, 114th Cong. (2015); S. amend. 4858 to H.R. 2578, 114th Cong. § 2 (2016); *see also* H.R. 5576, 114th Cong. § 2 (2016); S. Amend. 4749 to H.R. 2578, 114th Cong. (2016); S. Amend. 4720 to H.R. 2578, 114th Cong. (2016) (emphasis added).

33.    Despite numerous attempts by Congress to prohibit those on TSDB lists

from obtaining firearms, they have all failed due to objections about the lack

of due process afforded by such proposed limitations.[8]

**c. Constructive Denial of Plaintiff's Second Amendment Right to Bear Arms**

34.    Plaintiff incorporates all numbers in Section I-II, in addition to numbers

10-33 above.

35.    Plaintiff is a practicing Muslim of Palestinian national origin.

36.    Plaintiff lawfully owns three firearms, the purchases of which took place

between 2000 and 2016, including a HK VP9 that is registered with local law

enforcement in Michigan.

37.    Plaintiff is a longtime and active member of the National Rifle Association

("NRA"), after first joining on January 31, 2004.

38.    On June 11, 2017, Plaintiff was prohibited from flying from Bradley

International Airport.   TSA Assistant Federal Security Director Steven

Blindbury verbally informed Plaintiff that he is on the No Fly List.

---

[8] *See* David Herszenhorn, *Bipartisan Senate Group Proposes 'No Fly, No Buy' Gun Measure*, N.Y. Times, June 21, 2016, *available at* https://www.nytimes.com/2016/06/22/us/politics/senate-gun-control-no-fly-list-terrorism.html (quoting Sen. John Cornyn, "I think it's a slippery slope when an American citizen is denied a constitutional right without forcing the government to come forward with some evidence on the front end, as opposed to leaving that on the back end.")

39.   On June 24, 2017, Plaintiff attempted to purchase a pistol from Target Sports Orchard Lake, also known as Target Sports II, which is a gun shop in Orchard Lake, Michigan.

40.   As is standard protocol in Michigan, a Target Sports Orchard Lake store clerk named Roy first ran a background check on Plaintiff, including searching his name in the NICS, before completing the sale of the firearm to Plaintiff.

41.   When the clerk ran the search, he received a call from Defendant Agent, an individual or individuals purporting to be with the FBI, who instructed the clerk that Plaintiff was the current subject of active FBI investigation, and further instructed the clerk to tell Plaintiff the purchase of the firearm was delayed.

42.   The clerk followed the instructions given by the FBI via Defendant Agent, and told Plaintiff that the sale could not be completed at that time.

43.   The clerk did, however, allow Plaintiff to purchase ammunition and use the store's shooting range, which Plaintiff did that same day.

44.   The clerk never heard back from the FBI or Defendant Agent.

45.   Because Defendant Agent previously indicated to the clerk that Plaintiff was under FBI investigation, the clerk did not feel he could complete the transaction with Plaintiff.

46.     The clerk also felt that if the FBI was investigating Plaintiff, the last thing
        he would want to do is sell Plaintiff the gun.

47.     Therefore, the clerk's refusal to complete the sale occurred as a direct
        result of the FBI's representation that Plaintiff was the subject of an active
        government investigation. [9]

48.     If the FBI ever notifies the clerk that Plaintiff is no longer, or has never
        been, under active investigation, the clerk would be willing to sell Plaintiff
        the firearm.

49.     These actions and communications by the FBI via Defendant Agent
        created a chilling effect, directly resulting in a constructive denial of
        Plaintiff's exercise of Second Amendment rights.

        **a. Consulting the TSDB**

50.     Plaintiff incorporates all numbers in Section I-II, in addition to numbers
        10-49 above.

---

[9] Federal Firearms Licensees (FFLs) are permitted, **_at their discretion_**, to transfer
firearms three days after the delay response, unless prohibited by state law. *See* 28
C.F.R. § 25.6(c)(1)(iv)(B) ("A 'Delayed' response to the FFL indicates that the
firearm transfer should not proceed pending receipt of a follow-up 'Proceed'
response from the NICS or the expiration of three business days (exclusive of the
day on which the query is made.")) (emphasis added).

51.   The majority of the records in the NICS are obtained from Federal agencies.[10]

52.   The NICS began utilizing terrorist watch list records on February 3, 2004.[11]

53.   Effective since February 3, 2004, all NICS transactions with potential or valid matches to terrorist watch list records are automatically delayed to give NICS personnel the chance to further research the transaction for prohibiting information before a response (e.g., "proceed" or "denied") is given to the initiator of the background check.[12]

54.   This practice of delaying transactions when matches to watch list records are found has existed for over a decade, despite no federal law explicitly prohibiting those on a Watch List from purchasing firearms, such as the categories under 18 U.S.C. § 922 (g).

   **a. NICS Appeal Process**

55.   Plaintiff incorporates all numbers in Section I-II, in addition to numbers 10-54 above.

56.   To initiate a firearm appeal with the NICS, an application must include

---

[10] *See* 28 CFR 25.4 ("Most records in the NICS Index will be obtained from Federal agencies").

[11] *See Gun Control and Terrorism.*

[12] *See id.*

the NTN number, which must be obtained from the FFL where the attempted

transaction took place.[13]

57.    Pursuant to the aforementioned policy of obtaining the NTN, Plaintiff's

representatives contacted Target Sports Orchard Lake and were told the NTN

number was 1009M3CS1.

58.    Plaintiff then initiated a timely online appeal with the NICS on September

18, 2017, appealing the constructive denial of his gun purchase, and

triggering the FBI's duty to preserve all related documentation.

59.    Plaintiff timely appealed the denial of the purchase of the firearm in an

effort to ensure his records are not purged from the NICS system within 90,

or 88, days of the attempted gun store transaction.[14]

60.    On September 19, 2017, the FBI wrote Plaintiff that the NTN could not be

matched to a transaction maintained in the NICS, and that therefore, the NICS

Section was unable to process the appeal request.

---

[13] *See* FBI.gov, NICS Appeals, https://www.fbi.gov/services/cjis/nics/national-instant-criminal-background-check-system-nics-appeals (last visited Oct. 2, 2017).

[14] *See* 28 C.F.R. § 25.9 (b)(1)(ii) ("NICS Audit Log records relating to transactions in an open status, except the NTN and date, will be destroyed after not more than 90 days from the date of inquiry"); *see also* FBI.gov, NICS Appeals ("a delayed transaction will be purged from the NICS within 88 days from creation").

61. The letter also stated that "the NICS is required to destroy delayed transactions within 88 days from the date the transaction was initiated," and indicated that Plaintiff's transaction may fit into that category, despite the letter being written only 87 days after the "delayed" transaction.

62. Upon receipt of this letter, which was sent by paper mail only and not by any quicker modern forms of transmission, Plaintiff's representatives immediately contacted the FFL, Target Sports Orchard Lake, and reconfirmed that the NTN previously submitted was accurate.

63. Upon information and belief, Defendants either deleted the records too early or wrote that the NTN was invalid in order to reach the time period when records may be purged.

64. In an attempt to obtain any records NICS has, Plaintiff promptly resubmitted an online appeal, with the same NTN number and five possible variations, which included similar numbers or letters.

65. On October 5, 2017, the FBI once again wrote Plaintiff that the NTN could not be matched to a transaction maintained in the NICS, and that therefore, the NICS Section was unable to process the appeal request. The letter again stated that it would destroy delayed transactions within 88 days and that Plaintiff's case may fall into that category.

## IV.   **Causes of Action**

a.  **COUNT ONE:**

## **DEFENDANT AGENT IS GUILTY OF DEFAMATION, BY WAY OF *BIVENS* AND 28 U.S. § 1367(a).**

66.    Plaintiff hereby alleges and incorporates all numbers in Sections I – III above, by reference herein.

67.    Defendant Agent is liable in his or her individual capacity under *Bivens*, because Defendant Agent's communications, upon information and belief, improperly caused Plaintiff to be deprived of his Second Amendment right to bear arms.

68.    Individual, non-supervisory defendants are liable under *Bivens* if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.

69.    Upon information and belief, Defendant Agent exceeded his or her authority by instructing the store clerk to delay (and therefore constructively deny) the sale of Plaintiff's gun, by stating Plaintiff is the subject of an ongoing investigation by the government and/or on a Watch List.

70.    This communication by Defendant Agent was unprivileged, as the clerk had no need to know if Plaintiff was in fact under government investigation.

71.     Additionally, Defendant Agent had no basis for telling the clerk that the FBI was investigating Plaintiff.

72.     As policies exist to only say "proceed," "denied," or "delayed," in response to NICS inquiries, Defendant Agent either knew or reasonably should have known that his or her conduct would lead to the deprivation of Plaintiff's constitutional rights.

73.     Defendant Agent therefore violated *Bivens* and is liable to Plaintiff for the deprivation of his constitutional right to bear arms.

74.     Defendant Agent's publication of this information not only resulted in the deprivation of his Second Amendment rights, but also injured Plaintiff's reputation.

75.     Accordingly, this Court additionally has supplemental jurisdiction over this defamation claim pursuant to 28 U.S. § 1367(a).

76.     Defamation *per se* exists if the communication is false and imputes a criminal offense.

77.     Defendant Agent's communication to the clerk that Plaintiff is under active government investigation falsely created the impression that Plaintiff has committed or will be charged with a crime.

78.     The clerk was ultimately unwilling to sell Plaintiff the gun, because Defendant Agent's communication that the FBI is actively investigating

Plaintiff gave the clerk reason to believe Plaintiff is dangerous or has, or is suspected of having, ties to terrorism.

79.    This communication harmed the reputation of Plaintiff, as it deterred the FFL from associating or dealing with him, and resulted in the loss of a constitutionally protected and fundamental liberty interest.

80.    Defendant Agent's published communications to the store clerk therefore defamed Plaintiff and caused special harm, resulting in damage to Plaintiff's reputation and a deprivation of his Second Amendment right to bear arms.

**b. COUNTS TWO & THREE:**

**VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE SECOND AMENDMENT, BY WAY OF LACK OF DUE PROCESS**

81.    Plaintiff incorporates all numbers in Section I-III, in addition to numbers 66-80 above.

82.    Pursuant to the Second Amendment, the right of the people to keep and bear arms "shall not be infringed." U.S. Const. Amend. II.

83.    The Fifth Amendment states that "No person shall […] be deprived of life, liberty, or property, without due process of law."

84.    Defendants Sessions, Wray, Kable, and Brandon deprived Plaintiff of his Second Amendment Rights by violating the Due Process Clause of the Fifth Amendment.

85.     These Defendants, in their official capacities, violated the Plaintiff's rights under the Due Process Clause of the Fifth Amendment in the following ways:

a.     ***Count Two: Procedural Due Process***

86.     Plaintiff incorporates all numbers in Section I-III, in addition to numbers 66-85 above.

87.     Procedural due process imposes constraints on governmental decisions depriving individuals of "liberty" or "property" interests, within the meaning of the Due Process Clauses of the Fifth or Fourteenth Amendments.

88.     The right to keep and bear arms is fundamental to the American "scheme of ordered liberty," as individual self defense is the central component of the right, and the right of self defense is deeply rooted in this nation's "history and tradition."[15]

89.     The liberty interest of bearing and keeping arms, provided for by the Second Amendment, applies against the federal government, its political subdivisions, and its agencies under the Fifth Amendment.

90.     The fundamental requirement of due process is that persons shall be afforded notice and an opportunity to be heard.

---

[15] *District of Columbia v. Heller,* 554 U.S. 570, 595-99 (2008).

91. The constitutional duty to provide fair procedures gives citizens the opportunity to prevent deprivations from happening.

92. Defendants did not provide Plaintiff any notice of any factors making him ineligible for the exercise of his Second Amendment right to bear arms.

93. Defendants have not produced any information concerning the reasons for the constructive denial of Plaintiff's right to purchase a firearm.

94. Defendants did not provide an adequate opportunity for Plaintiff to be heard before or after they prevented him from the exercise of his Second Amendment rights.

95. Upon information and belief, Defendants nonetheless prohibited Plaintiff from exercising his fundamental rights to bear arms and for self defense, due to his national origin and/or religious background and/or his placement on the No Fly List and/or a Watch List,[16] by delaying the transaction, and further by creating a chilling effect when Defendants notified the FFL that Plaintiff is under active government investigation.

96. Plaintiff attempted to acquire information regarding the constructive denial of his Second Amendment right through the NICS appeal process.

---

[16] Upon information and belief, Plaintiff believes his placement on the No Fly List and/or a Watch List is also as a result of his religion and/or national origin. Plaintiff is specifically challenging this placement through the DHS TRIP process, which is separate from the facts relevant to this lawsuit and his attempt to lawfully purchase a firearm.

97.   Defendants did not supply Plaintiff any records relating to this constructive
      denial.

98.   Upon information and belief, Defendants either deleted the records relating
      to the transaction prior to expiration of the specified time period, or purposely
      stated that the NTN which Plaintiff properly obtained from the FFL was
      incorrect, in order to stall for more time and so that the relevant time period
      before purging records relevant to the NICS would expire.

99.   These actions further impede Plaintiff's ability to receive notice and the
      reasons regarding his inability to purchase firearms.

100.  Even if the NTN originally submitted was actually invalid, by requiring
      Plaintiff to obtain NTNs from the FFLs, Defendants' processes do not provide
      an adequate way for Plaintiff to ensure that the NTN he received from the FFL
      was accurate.

101.  In addition, the NICS appeal process is merely a litigation hold, existing
      only for the purpose of the preservation of relevant documents.

102.  The NICS appeal process provides individuals like Plaintiff no redress
      avenue to contest the actual deprivation of their liberty interests.

103.  Therefore, the NICS appeal process is not an adequate legal mechanism,
      as it provides Plaintiff no meaningful way to rebut any charges against him.

104.  Plaintiff is entitled to an adequate legal mechanism that affords him

notice and an opportunity to contest the deprivation of his liberty interests in self defense and the right to bear arms.

105. Plaintiff has therefore been deprived of his protected liberty interests without adequate procedural due process.

ii. ***Count Three: Substantive Due Process***

106. Plaintiff incorporates all numbers in Section I-III, in addition to numbers 66-105 above.

107. The Fifth Amendment has a substantive component that "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'"[17]

108. Substantive due process provides heightened protection against government interference.

109. It also forbids governmental action that infringes certain fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.

110. As previously set forth in this Complaint, the right to keep and bear arms is fundamental to the American "scheme of ordered liberty," as individual self

---

[17] *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

defense is the central component of the right, and the right of self defense is deeply rooted in this nation's "history and tradition."[18]

111. Automatically delaying gun sales to those whose names are located in the TSDB is not narrowly tailored to any governmental objective, including national security.

112. Any automatic delay is stated by the government to be for the purpose of searching for prohibiting criteria, but the NICS search is designed to already do this, regardless of any presence on a Watch List; therefore, this reasoning is redundant and circular, and the delay is not narrowly tailored.

113. For persons placed on the No Fly List (or any Watch List), there is no disclosure to those affected individuals, or any judicial oversight or review before a person is placed on the list. In addition, the applicable standard of proof is far lower than that typically required when implicating the deprivation of constitutional liberties such as those protected by the Second Amendment.

114. This automatic delay, and the resulting constructive denials, for Plaintiff and others whose names are on a list maintained by the TSDB, is accordingly premised on a flawed system that itself affords little to no due process protection.

---

[18] *Heller,* 554 U.S. at 595-99.

115.    Furthermore, any policies of Defendants, which authorize notifying FFLs that potential purchasers are under active government investigation or are on a Watch List, are not sufficiently narrowly tailored to justifiably allow for deprivation of the fundamental right to bear arms. These actions result in a chilling effect, which precluded Plaintiff's exercise of his civil liberties.

116.    Plaintiff has therefore been deprived of his protected liberty interests without adequate substantive due process.

### c.  COUNT FOUR:

### VIOLATION OF PLAINTIFF'S RIGHT TO EQUAL PROTECTION OF THE LAWS UNDER THE FIFTH AMENDMENT

117.    Plaintiff incorporates all numbers in Section I-III, in addition to numbers 66-116 above.

118.    Defendants Sessions, Wray, Kable, and Brandon deprived Plaintiff of equal protection of the laws by violating the Fifth Amendment.

119.    The Fifth Amendment does not itself contain a guarantee of equal protection, but instead incorporates the Equal Protection Clause of the Fourteenth Amendment for actions against the federal government.

120.    The relevant analysis for equal protection violations under the Fifth Amendment is the same as the analysis for violations under the Equal Protection Clause of the Fourteenth Amendment: Defendants treated Plaintiff disparately, as compared to similarly situated persons, and that disparate

treatment burdens his fundamental rights and unjustly targets him with no rational basis.

121. Defendants constructively deprived Plaintiff of his fundamental right to bear arms when they delayed the sale and created a chilling effect on Plaintiff's rights by telling the store clerk that the reason for the delay was because Plaintiff is under government investigation.

122. Upon information and belief, Defendants therefore violated their own policies of providing a "proceed, "delayed," or "denied" response **without providing additional details**, such as disqualifying information.

123. The actions and communications of Defendants violated Plaintiff's rights to equal protection, as individuals who are not placed on any list maintained by the TSC and who similarly have no other disqualifying factors would have received a "proceed" response.

124. Upon information and belief, no prohibiting criteria would have been communicated to the FFLs for similarly situated individuals not placed on the No Fly List or a Watch List and/or targeted due to their national origin and religion.

125. These actions and communications of Defendants resulted in the disparate treatment of Plaintiff, and presumably others who are also on a list maintained

by the TSC; this treatment resulted in the unjust deprivation of fundamental rights.

126. In the alternative, in the event that Defendant Agent went outside of the scope of Defendants' policies by notifying the store clerk that Plaintiff is under investigation, Defendants still treated Plaintiff disparately by delaying his sale when no other prohibiting criteria listed under 18 U.S.C. § 922 (g) were found.

127. As stated above, automatically delaying gun sales to those whose names are located in the TSDB is not sufficiently narrowly tailored to any governmental objective, including national security. The NICS search is already designed to search for prohibiting criteria regardless of any presence on a Watch List.

128. Furthermore, any policies of Defendants notifying FFLs that potential purchasers are under active government investigation are not sufficiently narrowly tailored to allow for deprivation of the fundamental right to bear arms, and result in a chilling effect precluding Plaintiff's civil liberties and treating Plaintiff disparately.

129. Defendants' discriminatory intent is evident in the manner of delaying firearm sales to those on a Watch List and/or undergoing active government

investigation, even though no prohibiting criteria are otherwise found relating to these individuals during NICS background searches.

130. A communication about Plaintiff's status on a Watch List and/or as the target of a government investigation shows further disparate treatment as compared to others who attempt to purchase firearms, due to the chilling effect this communication creates.

131. Therefore, upon information and belief, Plaintiff was subjected to unequal protection of the laws due to his presence on a Watch List and/or status of undergoing active government investigation. Plaintiff was treated differently as compared to others who, just like him, do not otherwise have any prohibiting criteria for obtaining a firearm found under 18 U.S.C. § 922 (g), but unlike him, can therefore obtain firearms.

d. **COUNT FIVE:**

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

132. Plaintiff incorporates all numbers in Section I-III, in addition to numbers 66-131 above.

133. Defendants Sessions, Wray, Kable, and Brandon, violated the Administrative Procedural Act ("APA") because Defendants' actions were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and were without observance of procedures required by law.

134.   NICS records must be maintained for at least 88, if not 90, days.

135.   Upon information and belief, Defendants either deleted the records for Plaintiff too early, or claimed that the NTN was invalid in order to reach the time period when records may be purged.

136.   Plaintiff, despite submitting a timely request and following the proper procedures provided by the Defendants to obtain the NTN from the FFL, was not notified before any records pertaining to him were purged.

137.   These actions further hinder Plaintiff's ability to contest the deprivation of his Second Amendment rights, and are not in accordance with Defendants' own procedures.

138.   Therefore, Defendants violated the Administrative Procedure Act by failing to follow their own prescribed policies, and providing no other avenue of redress for Plaintiff to utilize.

e.   **COUNT SIX:**

## PLAINTIFF IS ENTITLED TO DECLARATORY AND INJUNCTIVE RELIEF, PURSUANT TO 28 U.S.C. §§ 2201, 2202

139.   Plaintiff incorporates all numbers in Section I-III, in addition to numbers 66-138 above.

140.   Plaintiff is entitled to Declaratory and Injunctive Relief against all Defendants.

141.   By constructively denying Plaintiff his right to possess arms, due to his

inclusion on a Watch List, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law and Federal administrative policy which deprive individuals, including the Plaintiff, of their right to keep and bear arms, in violation of the Second and Fifth Amendments to the United States Constitution.

142.   Plaintiff is therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

## V.   **PRAYER FOR RELIEF**

Plaintiff prays for judgment of liability in favor of the Plaintiff and against the Defendants, and respectfully requests that this Court grant the following relief:

1) For all costs and expenses herein, against all Defendants;

2) For attorney's fees and costs including reasonable attorneys' fees and costs as provided by any applicable provision of the law, against all Defendants;

3) For judgment against Defendants for preliminary and permanent injunctive and declaratory relief that Plaintiff, and those similarly situated to Plaintiff, be allowed to exercise Second Amendment rights, against all Defendants;

4) For compensatory damages, against Defendant Agent;

5) Any additional relief this Court deems just, proper, and equitable.

Respectfully submitted this <u>20th</u> day of December, 2017.

/s/ ***Charles D. Swift***

Charles D. Swift

Counsel for Plaintiff

TX State Bar No. 24091964

Christina A. Jump

(application pending)

TX State Bar No. 00795828

833 E. Arapaho Rd., Suite 102

Richardson, TX 75081

Tel: (972) 914-2507

Fax: (972) 692-7454

cswift@clcma.org

cjump@clcma.org

## VERIFICATION OF COMPLAINT

I, Khalid M. Turaani, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 30th day of October, 2017.