IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHALID M. TURAANI,                          )
                                            )
    Plaintiff,                              )
                                            )
    v.                                      )    Case No. 2:17-cv-14112-GAD-RSW
                                            )
JEFFERSON B. SESSIONS, III, in his          )
capacity as Attorney General of the         )
United States of America;                   )
CHRISTOPHER A. WRAY, in his                 )
official capacity as Director               )
of the Federal Bureau of Investigation;     )
CHARLES H. KABLE, IV, in his                )
official capacity as Director of the        )
Terrorist Screening Center; THOMAS          )
E. BRANDON, in his official capacity        )
as Deputy Director of the Bureau of         )
Alcohol, Tobacco, Firearms and              )
Explosives; and UNNAMED AGENT,              )
in his or her individual capacity as FBI    )
agent,                                      )
                                            )
    Defendants.                             )
_____    )

## **MOTION TO DISMISS**

The official capacity federal Defendants Jefferson B. Sessions, III, in his

official capacity as Attorney General of the United States of America; Christopher

A. Wray, in his official capacity as Director of the Federal Bureau of Investigation;

Charles H. Kable, IV, in his official capacity as Director of the Terrorist Screening

Center; and Thomas Brandon, in his official capacity as Deputy Director of the

Bureau of Alcohol, Tobacco, Firearms, and Explosives, hereby move this Court

under Federal Rule of Civil Procedure 12(b)(1) & (6), for dismissal of Plaintiff's

claims against them for lack of subject-matter jurisdiction and for failure to state a

claim upon which relief may be granted.  The official capacity federal Defendants

rely on the accompanying brief to support this motion.

As required by E.D. Mich. LR 7.1(a), Defendants notified Plaintiff of the

motion and sought concurrence via email on April 5, 2018.  Plaintiff, through his

counsel, indicated that he opposes the motion.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General, Civil Division

JOHN R. TYLER
Assistant Director, Federal Programs Branch

*s/ Martin M. Tomlinson*
MARTIN M. TOMLINSON (SC Bar No. 76014)

Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 6134
Washington, D.C.  20530
Tel: (202) 353-4556
Fax: (202) 616-8470
E-mail:  martin.m.tomlinson@usdoj.gov

April 5, 2018          Attorneys for Official Capacity Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHALID M. TURAANI,                          )
                                            )
    Plaintiff,                          )
                                            )
                                            )     Case No. 2:17-cv-14112-GAD-RSW
    v.                                  )
                                            )
JEFFERSON B. SESSIONS, III, in his          )
capacity as Attorney General of the         )
United States of America;                   )
CHRISTOPHER A. WRAY, in his                 )
official capacity as Director               )
of the Federal Bureau of Investigation;     )
CHARLES H. KABLE, IV, in his                )
official capacity as Director of the        )
Terrorist Screening Center; THOMAS          )
E. BRANDON, in his official capacity        )
as Deputy Director of the Bureau of         )
Alcohol, Tobacco, Firearms and              )
Explosives; and UNNAMED AGENT,              )
in his or her individual capacity as FBI    )
agent,                                      )
                                            )
    Defendants.                         )
_____     )

## MEMORANDUM IN SUPPORT OF OFFICIAL-CAPACITY FEDERAL DEFENDANTS' MOTION TO DISMISS

# ISSUES PRESENTED

1.  Whether Plaintiff lacks standing to bring claims against official-capacity federal Defendants because he has failed to allege any concrete and particularized injury attributable to the actions of Defendants, and has failed to show how an order of this Court would redress his alleged injury.

    *The official-capacity federal Defendants respond, "Yes."*

2.  Whether Plaintiff's due process causes of action fails to state a claim on which relief can be granted because he has failed to allege that he was prejudiced in any way by the alleged lack of due process and has failed to allege any actions of Defendants that "shock the conscience."

    *The official capacity federal Defendants respond, "Yes."*

3.  Whether Plaintiff's equal protection cause of action fails to state a claim on which relief can be granted because he has failed to allege that he was treated differently from other similarly-situated individuals.

    *The official-capacity federal Defendants respond, "Yes."*

4.  Whether Plaintiff's APA cause of action fails to state a claim because he fails to identify any law or regulation requiring the agency to take the action he proposes.

    *The official-capacity federal Defendants respond, "Yes."*

5.  Whether Plaintiff's injunctive and declaratory relief cause of action fails to state a claim on which relief can be granted because it merely requests specific relief for the other causes of action, and articulates no independent basis for relief.

    *The official-capacity federal Defendants respond, "Yes."*

## MOST PERTINENT AUTHORITIES

1.     Fed. R. Civ. P. 12(b)(1); 28 C.F.R. § 25.6(c)(1)(iv)(B); *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001); *Crawford v. Dep't of Treasury*, 868 F.3d 438 (6th Cir. 2017).

2.     Fed. R. Civ. P. 12(b)(6); *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998); *EJS Props., LLC v. City of Toledo*, 698 F.3d 845 (6th Cir. 2012); *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F. 3d 678 (6th Cir. 2016) (en banc).

3.     Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Nordlinger v. Hahn*, 505 U.S. 1 (1992); *Ryan v. City of Detroit*, 174 F. Supp.3d 964 (E.D. Mich 2016).

4.     Fed. R. Civ. P. 12(b)(6); 28 C.F.R. § 25.9(b)(1).

5.     Fed. R. Civ. P. 12(b)(6); *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926 (6th Cir. 2013); *Davis v. United States*, 499 F.3d 590 (6th Cir. 2007).

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

  **I. Statutory and Regulatory Background** .......................................3

  **II. Plaintiff's Complaint** ................................................................9

ARGUMENT ...................................................................................................11

  **I. Plaintiff's Claims Should Be Dismissed for Lack of Standing** ...............11

    A. Legal standard for motions to dismiss pursuant to Rule 12(b)(1) ................12

    B. Plaintiff has established no case or controversy because there are no continuing, present adverse effects ................................................13

    C. Plaintiff has alleged no concrete, particularized injury that is traceable to any action of Defendants and redressable by this Court ......................................14

  **II. Plaintiff's Claims Should Be Dismissed Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief May Be Granted** ........18

    A. Legal standard for motions to dismiss pursuant to Rule 12(b)(6) ................18

    B. Plaintiff's procedural due process claim fails because he did not take advantage of the process available to him and has not shown how he was prejudiced by the alleged deprivation of process ...........................................19

    C. Plaintiff's substantive due process claim fails because he fails to make any allegation of governmental conduct that "shocks the conscience" ...............23

    D. Plaintiff's equal protection claim fails because he has not pled facts demonstrating that he was treated any differently than other similarly-situated individuals ...........................................................................26

E. Plaintiff has not stated a claim under the APA because he fundamentally misrepresents the regulations at issue...........................................31

F. Plaintiff's cause of action for declaratory and injunctive relief fails because such relief is a remedy, not a separate cause of action.................................32

**CONCLUSION**.........................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Advansky v. City of Olmsted Falls*,
　395 F.3d 291 (6th Cir. 2005) ...............................................................26

*Ailor v. City of Maynardville*,
　368 F.3d 587 (6th Cir. 2004) ...............................................................12

*Ali v. Rumsfeld*,
　649 F.3d 762 (D.C. Cir. 2011) ..............................................................33

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .............................................................................18

*Barber v. Miller*,
　809 F.3d 840 (6th Cir. 2015) ...............................................................12

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
　492 U.S. 469 (1989) .............................................................................30

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ....................................................................... 18, 19

*Bell v. Hood*,
　327 U.S. 678 (1946) .............................................................................13

*Bolling v. Sharpe*,
　347 U.S. 497 (1954) .............................................................................26

*City of Los Angeles v. Lyons*,
　461 U.S. 95 (1983) ...............................................................................13

*Cleveland Branch, NAACP v. City of Parma, Ohio*,
   263 F.3d 513 (6th Cir. 2001) ...............................................................12

*Coyne v. Am. Tobacco Co.*,
   183 F.3d 488 (6th Cir. 1999) ...................................................... 11, 13

*Crawford v. Dep't of Treasury*,
   868 F.3d 438 (6th Cir. 2017) ...................................................... 16, 17

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011) ...............................................................26

*Cty. Of Sacramento v. Lewis*,
   523 U.S. 833 (1998)...................................................................... 23, 24

*Davis v. United States*,
   499 F.3d 590 (6th Cir. 2007) ...............................................................33

*EJS Props., LLC v. City of Toledo*,
   698 F.3d 845 (6th Cir. 2012) ...................................................... 19, 23

*Flowers v. City of Minneapolis*,
   558 F.3d 794 (8th Cir. 2009) ...............................................................27

*FW/PBS, Inc. v. City of Dall.*,
   493 U.S. 215 (1990)...............................................................................12

*Garza-Moreno v. Gonzales*,
   489 F.3d 239 (6th Cir. 2007) ...............................................................20

*Goryoka v. Quicken Loan, Inc.*,
   519 F. App'x 926 (6th Cir. 2013) .......................................................33

*Graham v. Mukasey*,
   519 F.3d 546 (6th Cir. 2008) ...................................................... 20, 21

*Grendell v. Ohio Supreme Court*,
    252 F.3d 828 (6th Cir. 2001) ........................................................ 11, 13

*Harris v. City of Akron*,
    20 F.3d 1396 (6th Cir. 1994) ............................................................20

*Huddleston v. United States*,
    415 U.S. 814 (1974)...........................................................................4

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ................................................... 9, 18-19

*Loesel v. City of Frankenmuth*,
    692 F.3d 452 (6th Cir. 2012) ...........................................................27

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992).........................................................................17

*Mathews v. Eldridge*,
    424 U.S. 319 (1976).........................................................................19

*Mator v. City of Ecorse*,
    301 F. App'x 476 (6th Cir. 2008).......................................................20

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
    *895 F.2d* 266 (6th Cir. 1990) ...................................................... 12, 13

*Nat'l Rifle Assoc. of Am. v. Magaw*,
    132 F.3d 272 (6th Cir. 1997) ............................................................13

*Neinast v. Bd. of Trs. of Columbus Metro. Library*,
    346 F.3d 585 (6th Cir. 2003) ............................................................30

*Nordlinger v. Hahn*,
   505 U.S. 1 (1992)..................................................................................27

*Omni Capital Int'l v. Rudolph Wolff & Co.*,
   484 U.S. 97 (1987)...............................................................................11

*Phillips v. DeWine*,
   841 F.3d 405 (6th Cir. 2016), *cert. denied sub nom. Tibbetts v. DeWine,*
   138 S. Ct. 301 (2017) ...........................................................................12

*Raines v. Byrd*,
   521 U.S. 811 (1997)...............................................................................12

*Range v. Douglas*,
   763 F.3d 573 (6th Cir. 2014) ......................................................... 23-24

*Robinson v. Sessions*,
   --- F. App'x ----, 2018 WL 456725 n.3 ......................................... 24-25

*Rochin v. California*,
   342 U.S. 165 (1952)...............................................................................23

*Rogers v. Stratton Indus., Inc.*,
   798 F.2d 913 (6th Cir. 1986) .................................................................12

*Ryan v. City of Detroit*,
   174 F. Supp.3d 964 (E.D. Mich 2016), *aff'd* 698 F. App'x 272 (6th Cir. 2017) .....
   26, 27

*Schall v. Martin*,
   467 U.S. 253 (1984)...................................................................... 25, 29

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976).......................................................................... 16, 17

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950)................................................................33

*Tyler v. Hillsdale Cty. Sheriff's Dep't*,
   837 F. 3d 678 (6th Cir. 2016) ................................. 25, 29, 30

*United States v. Chapman*,
   666 F.3d 220 (4th Cir. 2012) ...............................................30

*United States v. Chovan*,
   735 F.3d 1127 (9th Cir. 2013) .............................................29

*Warner v. Ashcroft*,
   381 F.3d 534 (6th Cir. 2004) ...............................................20

*Warshak v. United States*,
   532 F.3d 521 (6th Cir. 2008) ...............................................11

*Washington v. Glucksberg*,
   521 U.S. 702 (1997).........................................................25, 29

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*,
   648 F.3d 452 (6th Cir. 2011) ...............................................19

*Webb v. McCullough*,
   828 F.2d 1151 (6th Cir. 1987) .............................................24

*Women's Med. Prof'l Corp. v. Baird*,
   438 F.3d 595 (6th Cir. 2006) ...............................................19

## **Statutes**

5 U.S.C. §§ 701-706................................................................10

18 U.S.C. §§ 921-931..............................................................3

18 U.S.C. § 922 ................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................12

Fed. R. Civ. P. 12(b)(6) .................................................................. 12, 18

**Regulations**

27 C.F.R. § 478.124 ...........................................................................5, 8

28 C.F.R. § 25.1 .................................................................................4, 6

28 C.F.R. § 25.3 ....................................................................................4

28 C.F.R. § 25.6 ................................................................... *passim*

28 C.F.R. § 25.7 ....................................................................................5

28 C.F.R. § 25.9 ......................................................................... 7, 8, 31

28 C.F.R. § 25.10 ........................................................................ 8-9, 22

**Other Authorities**

FBI, NICS Appeals, https://www.fbi.gov/services/cjis/nics/national-instant-
criminal-background-check-system-nics-appeals
(last visited March 28, 2018) ................................................................32

H.R. Rep. No. 103-344, 1993 U.S.C.C.A.N. 1984 ......................................4

Brady Handgun Violence Protection Act,
Pub. L. No. 103-159, § 103(e)(1), 107 Stat. 1536 (1993) ......................25

# INTRODUCTION

Pursuant to statutory mandate and regulation, the Federal Bureau of Investigation ("FBI") oversees the National Instant Criminal Background Check ("NICS") background check process for individuals seeking to purchase firearms from federally licensed dealers.  This process serves the important purpose of assisting Federal Firearms Licensees in conducting a background check to determine if individuals are legally prohibited from possessing firearms by operation of federal or state law.  Carefully proscribed statutory and regulatory provisions ensure that the government agencies involved in background checks obtain and retain only that information that is necessary to ensure that the process operates efficiently and accurately.

Plaintiff, an individual who alleges that his attempt to purchase a firearm in June 2017 was delayed by the FBI, challenges in this lawsuit certain aspects of that process, alleging that the FBI improperly cross-checks all potential firearms purchasers against databases used to track potential terrorists.  Plaintiff alleges that this in fact happened to him, resulting in a delay of three business days of the firearms seller's legal authority to complete the transaction for the pistol Plaintiff was attempting to purchase, in violation of his due process and equal protection rights.  In addition, Plaintiff claims that the FBI improperly failed to retain information relating to the delay, in violation of the Administrative Procedure Act.

None of the claims brought by Plaintiff against the official-capacity Defendants can advance past the pleading stage. As an initial matter, Plaintiff lacks standing to pursue his claims for equitable relief because he has not alleged any concrete, particularized future harm that he will allegedly suffer as a result of any actions by Defendants, as opposed to the actions of the firearms seller, which Plaintiff has not named as a defendant in this action. Plaintiff does *not* allege that his previous background check currently results in a denial of his legal ability to purchase a firearm, or that there is any current legal prohibition in place that prevents him from purchasing a firearm in the future. Instead, Plaintiff's argument seems to be that because Defendants delayed his ability to purchase a firearm for three days, and as a result the federally licensed firearm dealer exercised its discretion not to sell him a firearm, this constituted a "constructive denial" of his right to possess a firearm, for which the Defendants should be held legally responsible. However, even if it is assumed *arguendo* that this past injury is traceable to Defendants, Plaintiff fails to aver facts demonstrating that there is a real and immediate threat that he will again be subject to this same injury in the future sufficient to support standing to bring claims for forward-looking equitable relief. Moreover, Defendants in fact cannot be held responsible for the decisions and actions of private firearm dealers, and Plaintiff accordingly has failed to allege

facts showing how his alleged injury is traceable to the actions of Defendants or redressable by an order of this Court.

Even if this Court holds that Plaintiff does have standing, Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff's due process causes of action fail because he has failed to show how he suffered any prejudice as a result of the alleged violation, and has also failed to show how such an act "shocks the conscience," as required for a substantive due process claim. Plaintiff's equal protection claim fails because he has failed to plead that Defendants treated him any differently from similarly-situated individuals. Plaintiff's APA claim fails because he has failed to allege that there is any rule or regulation requiring Defendants to retain information related to a "delay" response to a NICS inquiry for 87 days or more. And finally, Plaintiff's cause of action requesting injunctive and declaratory relief fails because those are categories of relief, not independent causes of action.

## BACKGROUND

## I.    Statutory and Regulatory Background

The Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921-931 ("the Act"), imposes a comprehensive federal regulatory scheme over the manufacture and distribution of firearms and ammunition. Congress's "principal purpose" in enacting federal gun control legislation "was to curb crime by keeping firearms out

3

of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (citation and internal punctuation omitted). The Gun Control Act imposes restrictions on the receipt, possession, shipment, and transfer of firearms and ammunition in or affecting interstate or foreign commerce.

In 1993, the Brady Act amended the Gun Control Act to require background checks of persons attempting to purchase firearms, in order to identify individuals whom the Gun Control Act or state law bars from possessing firearms. *See* H.R. Rep. No. 103-344 at 7, *reprinted in* 1993 U.S.C.C.A.N. 1984. The Brady Act directed the Attorney General to establish and operate a nationwide background check system that licensed firearms dealers could contact, by phone or electronically, to be informed whether information in the system indicates that transfer of a firearm to a particular individual would be prohibited. *See* 18 U.S.C. §§ 922(t)(1) & (t)(2). Under the authority delegated in the Brady Act, the Attorney General established the NICS, *see* 28 C.F.R. § 25.1 *et seq*., and assigned management of the NICS to the FBI, *see* 28 C.F.R. § 25.3.

As a general matter, the purchase of a firearm from a licensed dealer proceeds in two phases. In the first phase, a potential purchaser completes a Firearms Transaction Record ("Form 4473"), a form created by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which asks for certain

4

identifying information, such as the purchaser's name, sex, residence address, date and place of birth, height, weight, race, and country of citizenship. 27 C.F.R. § 478.124(c)(1). A purchaser must also complete a certification that he or she is not prohibited by the Gun Control Act from receiving a firearm. *Id*. A purchaser has the option of providing additional identifying information, such as his or her Social Security number, to help facilitate the NICS background check. *Id*. § 478.124(c)(2).

In the second phase of the process, the licensed dealer submits to the NICS via the FBI or a point-of-contact state agency[1] the following information about the potential purchaser: name, sex, race, date of birth, and state of residence. *See* 28 C.F.R. § 25.7(a). A background check is then performed using this information, to search three national databases: (1) the National Crime Identification Center (NCIC), containing records on wanted persons, protection orders, and other persons identified as relevant to NICS searches, including a sub-file of Known or Appropriately Suspected Terrorists (KST); (2) the Interstate Identification Index (III), which contains criminal history records; and (3) the NICS Index, which contains information on prohibited persons as defined in 18 U.S.C. § 922(g) or (n), and state law. *See* 28 C.F.R. §§ 25.6(c)(1)(iii), 25.6(f). The purpose of the check

---

[1] In Michigan, there is no relevant point-of-contact state agency for background checks, so all FFLs contact the NICS.

is to determine whether the individual attempting to purchase a firearm falls into one of the categories of persons prohibited from receiving or possessing firearms under federal or state law.[2] *See* 18 U.S.C. § 922(t)(2); 28 C.F.R. § 25.1.

If the background check reveals information demonstrating that either state or federal law prohibits the transfer, the transfer is denied. 18 U.S.C. § 922(t). If the search finds that a record requires more research to determine whether the prospective transferee may be prohibited from possessing a firearm by state or federal law, the transfer is delayed. 28 C.F.R. § 25.6(c)(1)(iv)(B). A match to the NCIC KST sub-file is not a federal basis for denial of a firearm but will generate a "delay" response until it is determined whether or not the person in question is legally eligible to purchase a firearm. The NCIC KST file is used for NICS purposes, to contact federal officers to determine whether or not they possess records in their investigative files which have not been entered into the databases

---

[2] Categories of persons prohibited from receiving or possessing firearms under federal law are set forth in 18 U.S.C. § 922(g) and (n): (1) persons convicted of a crime punishable by imprisonment for a term of more than one year; (2) fugitives from justice; (3) unlawful users of or those addicted to any controlled substance; (4) persons adjudicated as mentally defective or committed to a mental institution; (5) aliens illegally or unlawfully in the United States, or admitted to the United States pursuant to a non-immigrant visa; (6) persons discharged from the military under dishonorable conditions; (7) persons who have renounced their United States citizenship; (8) persons subject to certain types of restraining orders; (9) persons who have been convicted of a misdemeanor crime of domestic violence; and (10) persons under indictment for a crime punishable by a term exceeding one year. 18 U.S.C. § 922(g)(1)-(9), (n).

checked initially by NICS that would prohibit the transfer of a firearm under 18

U.S.C. § 922(g) or (n) or state law.  However, if there is no information

demonstrating that a person is prohibited, or if three business days elapse, the

transfer is allowed to proceed at the FFL's discretion.  *See* 28 C.F.R. § 25.6(c).

When a hit occurs in one of the three databases based on a transaction initiated by

a telephone call from the FFL, the FFL remains on the line and is transferred to the

FBI, at which time a NICS examiner reviews the responses and determines if a

"delay" response is appropriate.  When a "delay" response is issued based on a

transaction submitted electronically, the FFL receives the transaction status when

he or she signs into his or her E-check account to receive the response.  There is no

scenario in which a NICS representative would initiate a phone call to the FFL to

provide the "delay" response.

       The retention of records generated in this process is tightly controlled by

regulation.  If a sale is allowed to proceed, all records pertaining to that sale

generated as part of the background check, except for a unique identifying number

assigned to the check and the date such a number was assigned, are destroyed

within twenty-four hours.  18 U.S.C. § 922(t)(2)(C); 28 C.F.R. § 25.9(b)(1)(iii).

After the NICS background check is complete, the licensed dealer fills in

additional information on the Form 4473, such as the type of identification (e.g.,

driver's license) provided by the purchaser and the make, model, and serial number of the firearm(s) to be transferred to the purchaser.  27 C.F.R. § 478.124(c)(3).

The FBI also maintains an automated NICS Audit Log of all incoming and outgoing transactions that pass through the NICS system.  28 C.F.R. § 25.9(b). This log contains certain information supplied to the NICS about the firearm transaction, with only identifying information about denied transactions being retained on a long-term basis.  Regulations require that identifying information associated with "transactions in an open status [delayed],[3] except the NTN and date, will be destroyed after not more than 90 days from the date of inquiry."  *Id.* § 25.9(b)(1).  Information kept in the log is used largely for maintenance purposes, including to analyze system performance, assist users in resolving operational problems, and to support audits of the system and appeals.  *Id*. § 25.9(b)(2). Information from the log may also be used to assist ATF with investigations and conducting inspections of licensed dealers.  *Id*. § 25.9(b)(2)(i)-(ii).

Individuals who were denied a firearms purchase following a NICS background check may apply to either the FBI or point-of-contact state agency to request the reasons for the denial.  28 C.F.R. § 25.10(a).  The denying agency must

---

[3]  A transaction is considered to be in an "open status" for as long as there is a "delay" instruction in place, even after the point at which three business days have expired since the initial inquiry and response and the FFL can lawfully complete the transfer of the firearm.

respond within five days. *Id.* § 25.10(b). Such individuals may also challenge the accuracy of the record upon which the denial was based, or may demonstrate that their rights to possess a firearm have been restored. *Id.* § 25.10(c).

## II.    Plaintiff's Complaint

The specific facts of this case, as alleged by Plaintiff in his complaint, are as follows.[4] Plaintiff is a United States citizen who alleges that on June 24, 2017, he attempted to purchase a pistol from Target Sports Orchard Lake, a seller of firearms located in Orchard Lake, Michigan. Compl. ¶ 39, ECF No. 1. Plaintiff alleges that when the store's employee entered his information into NICS, the employee received a call from an FBI Agent who instructed the clerk to delay the transaction, and further stated that Plaintiff was "the current subject of active FBI investigation." *Id.* ¶ 41. Accordingly, the clerk told Plaintiff that the transaction could not be completed at that time. *Id.* ¶ 42. Plaintiff alleges that the seller never heard anything further from the FBI about the proposed purchase. Notably, Plaintiff does not allege that the FBI background check revealed information that

---

[4] For the purposes of this pleading, Defendants treat all allegations contained in Plaintiff's complaint as true, as they must at this early stage of the litigation. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted). However, nothing in this pleading should be construed as an admission or concession to any allegation made by Plaintiff. In particular, Defendants note that federal investigations are a matter of extraordinary sensitivity, and Defendants cannot and do not confirm or deny whether Plaintiff is now or has ever been under federal investigation.

would prohibit Plaintiff from owning or possessing a firearm pursuant to 18 U.S.C. § 922 or state law. *Id.* ¶ 44. Rather, Plaintiff alleges that Target Sports Orchard Lake expressed that it did not want to complete the transaction with Plaintiff due to the "delay" response. *Id.* ¶¶ 45-46. Plaintiff, moreover, does not allege that he returned to the store to attempt to complete the transaction after the expiration of the three-day delay period.

Plaintiff alleges that, on June 11, 2017, several weeks prior to his initiation of the transaction to purchase a firearm, he was prohibited from flying from Bradley International Airport and was verbally informed by a Transportation Security Administration employee that it was because he is on the "No Fly List." *Id.* ¶ 38. Based on this, Plaintiff alleges that his firearm purchase was delayed by the FBI because of his alleged placement on a No Fly List and/or a watch list. *Id.* ¶ 95.

Plaintiff brings six claims for relief. *Id.* ¶¶ 66-142, seeking relief under various provisions of the United States Constitution and the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Plaintiff names as Defendants Jefferson B. Sessions, III, the Attorney General of the United States, Christopher A. Wray, Director of the FBI, Charles H. Kable, IV, Director of the Terrorist Screening Center, and Thomas E. Brandon, Deputy Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, all in their official capacities. Plaintiff also

names and brings an individual capacity *Bivens* claim against an unnamed FBI

agent.[5]  Plaintiff seeks declaratory and injunctive relief, *id*. ¶ 139-42, as well as

requesting compensatory damages, attorney's fees, and all costs and expenses.

Compl. Prayer for Relief ¶¶ 1-5.

## ARGUMENT

## I.   Plaintiff's Claims Should Be Dismissed for Lack of Standing.

"Standing is the 'threshold question in every federal case.'"  *Grendell v.*

*Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (quoting *Coyne v. Am.*

*Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)).  Article III's case and

controversy requirement is not satisfied when a claimant lacks standing, which is

"a sufficiently concrete and redressable interest in the dispute."  *Warshak v. United*

*States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc).  To establish standing, a

plaintiff must show "(1) he or she has suffered an 'injury in fact' that is (a)

concrete and particularized and (b) actual or imminent . . . ; (2) the injury is fairly

traceable to the defendant's challenged action; and (3) it is likely, not speculative,

---

[5]  Because this unnamed and unidentified federal agent has not been served in his or her personal capacity, and therefore the personal-capacity *Bivens* claim is not properly before the Court at this time.  *See Omni Capital Int'l v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). As such, this Motion to Dismiss is brought only on behalf of the official capacity Defendants in response to the claims Plaintiff brings against them.

that the injury will be redressed by a favorable decision." *Ailor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004) (citing *Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 523-24 (6th Cir. 2001)).  The standing inquiry is "especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

A.   <u>Legal standard for motions to dismiss pursuant to Rule 12(b)(1)</u>

"Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).  The plaintiff must establish subject-matter jurisdiction by a preponderance of evidence. *Rogers*, 798 F.2d at 915.  The court construes the complaint in the light most favorable to the plaintiff.  *Phillips v. DeWine*, 841 F.3d 405, 413 (6th Cir. 2016) *cert. denied sub nom. Tibbetts v. DeWine,* 138 S. Ct. 301 (2017). (citing *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015)).  "Standing cannot be 'inferred.'" *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990).  Where a defendant moves to dismiss under both Rule 12(b)(1) and 12(b)(6), the Court should resolve

12

the threshold matter of whether it has subject-matter jurisdiction first. *Moir*, 895

F.2d at 269 (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

      B.    <u>Plaintiff has established no case or controversy because there are no</u>
<u>continuing, present adverse effects.</u>

The first requirement for standing is that Plaintiff must demonstrate the

existence of some actual or threatened injury. *Coyne*, 183 F.3d at 494. In an

action seeking declaratory and injunctive relief, "past exposure to illegal conduct

does not in itself show a present case or controversy regarding injunctive relief . . .

if unaccompanied by any continuing, present adverse effects." *City of Los Angeles*

*v. Lyons*, 461 U.S. 95, 102 (1983). While an allegation that a plaintiff was subject

to unlawful conduct in the past may be "evidence bearing on whether there is real

and immediate threat of repeated injury, *id.*, "where the threat of repeated injury is

speculative or tenuous, there is no standing to seek injunctive relief," *Grendell*, 252

F.3d at 833 (citing *Lyons*, 461 U.S. at 109). Where a plaintiff's claimed threat of

future injury is "highly conjectural, resting on a string of actions the occurrence of

which is merely speculative," plaintiff has not established sufficient injury to have

standing to seek declaratory and injunctive relief. *Id.* (citing *Nat'l Rifle Assoc. of*

*Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).

Here, Plaintiff's asserted injury is that when he attempted to purchase a

pistol on June 24, 2017, NICS returned a "delay" response, which prevented the

FFL from legally selling Plaintiff the pistol he was attempting to buy for three

13

business days.  However, Plaintiff does not allege that this had ever happened to him before; in fact, Plaintiff alleges that he lawfully purchased three firearms, the most recent of which was purchased in 2016, and makes no claim that there was any "delay" on those previous purchases.  Compl. ¶ 36.  Plaintiff also cannot establish standing based on the possibility of such a delay occurring again in the future.  Plaintiff has not claimed that he intends to purchase another firearm, from this or any other FFL.  And even if Plaintiff were to attempt to purchase another firearm, it is entirely speculative whether the purchase would again be delayed.  In short, Plaintiff has only alleged one isolated injury in the past, and has not alleged that there are any present adverse effects from that injury or offered anything beyond speculation as to whether a similar delay may occur in the future.  This is insufficient to give Plaintiff standing to seek declarative and injunctive relief, and the Court should accordingly dismiss Plaintiff's complaint for lack of subject-matter jurisdiction.

   C.   <u>Plaintiff has alleged no concrete, particularized injury that is traceable to any action of Defendants and redressable by this Court.</u>

Plaintiff does not have standing in this case because he has not alleged a concrete injury that is traceable to the actions of Defendants.  Plaintiff does not claim that Defendants have prohibited him from possessing firearms, and he concedes that he already owns three firearms.  Compl. ¶ 4.  Plaintiff also does not claim that Defendants issued a "denial" response to his attempted firearm

14

purchase, which would have legally barred the gun store from completing the transaction.

While Plaintiff alleges that Defendants did issue a "delay" response, he concedes that the response did not prohibit the gun store from completing the transaction after a three business day delay.  Compl. at 11 n.9 (stating that after three business days expire after a "delay" response is given, federal firearms licensees are "permitted, *at their discretion*, to transfer firearms") (citing 28 C.F.R. § 25.6(c)(1)(iv)(B)) (emphasis added).  Plaintiff cannot establish standing based on that delay in his purchase, because it has already expired and is no longer redressable by any action of this Court.  Plaintiff therefore has not identified any non-speculative, imminent injury caused by Defendants that can serve as the basis for Article III standing.

Unable to identify a redressable injury resulting from the "delay" response itself, Plaintiff characterizes the "delay" instruction as a "constructive denial" based on the gun store's alleged decision not to complete the transfer.  *See, e.g.*, Compl. ¶¶ 49, 93.  As an initial matter, however, it is unclear from Plaintiff's complaint whether the gun store actually refused to sell the gun to him as a result of the "delay" response.  While Plaintiff's complaint indicates that the store declined to sell him the gun at the time of his attempted purchase, he does not allege that he returned to the store after the three business day delay to try to

15

complete the purchase of the pistol.  As already explained, there was no legal impediment to the completion of the transfer at that time.  Plaintiff also does not allege that he attempted to purchase the same firearm from any other store.

Regardless, "[w]hen a plaintiff's alleged injury is the result of 'the independent action of some third party not before the court,' the plaintiff generally lacks standing to seek its redress."  *Crawford v. Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976)).  Even to the extent Plaintiff was unable to purchase his desired firearm, his inability resulted from the independent decisions of a third-party, the gun store, not Defendants' actions.  The applicable regulations make clear that a "delay" response only requires an FFL to not complete the sale for three business days if no "denied" instruction from NICS is received:

> A "Delayed" response to the FFL indicates that the firearm transfer should not proceed pending receipt of a follow-up "Proceed" response from the NICS or the expiration of three business days (exclusive of the day on which the query is made), *whichever occurs first.* (Example: An FFL requests a NICS check on a prospective firearm transferee at 9:00 a.m. on Friday and shortly thereafter receives a "Delayed" response from the NICS.  If state offices in the state in which the FFL is located are closed on Saturday and Sunday and open the following Monday, Tuesday, and Wednesday, and the NICS has not yet responded with a "Proceed" or "Denied" response, *the FFL may transfer the firearm at 12:01 a.m. Thursday.*)

28 C.F.R. § 25.6(c)(1)(iv)(B) (emphasis added).  Plaintiff does not contest the fact that the gun store could have completed the transaction and sold him the pistol

16

after three business days had expired.  He does not allege that Defendants gave the gun store any sort of instruction that the store should not complete the transaction at the end of the three business day period.  Plaintiff does not even allege that he returned to the store after three business days to try to complete the transaction.  As the Sixth Circuit has held, where the alleged injury is caused by the actions "'of some third party not before the court,' the plaintiff generally lacks standing to seek its redress."  *Crawford*, 868 F.3d at 455 (quoting *Simon*, 426 U.S. at 42).

For similar reasons, Plaintiff also fails to establish that the relief he seeks from this Court would actually result in the redress of his alleged injury.  In order to establish standing, "a plaintiff must also plead facts sufficient to establish that the court is capable of providing relief that would redress the alleged injury."  *Crawford*, 868 F.3d at 457 (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561-62 (1992)).  Here, any relief issued by this Court would not affect gun store's ability to legally sell Plaintiff a pistol, because the store is already entitled to complete the transaction.  To the extent the store has decided not to sell the gun, it is entirely speculative whether an order of this Court would alter that decision.

Accordingly, because Plaintiff has failed to establish the existence of a concrete, particularized injury that is traceable to any action of Defendants, and has failed to demonstrate that an order of this Court would actually redress his alleged

17

injury, Plaintiff lacks standing and his complaint should be dismissed by the Court

for lack of subject-matter jurisdiction.

## II.    Plaintiff's Claims Should Be Dismissed Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief May Be Granted.

Even if the Court determines that Plaintiff has standing, it should still

dismiss Plaintiff's complaint for failure to state a claim upon which relief may be

granted pursuant to Federal Rule of Civil Procedure 12(b)(6). As explained below,

none of the causes of action brought by Plaintiff articulates a plausible claim

against official-capacity Defendants. Plaintiff's failure to assert a cause of action

sufficient to advance beyond the pleading stage thus provides an additional basis

for dismissing the complaint.

### A.    Legal standard for motions to dismiss pursuant to Rule 12(b)(6)

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl Corp. v. Twombly*, 550 U.S. 544,

547 (2007)). "A formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 500 U.S. at 555 (citation omitted). Rather, plausibility exists when

the facts alleged allow for a reasonable inference that the defendant is liable for the

misconduct charged. *Iqbal*, 556 U.S. at 678. "The factual allegations, assumed to

be true, must do more than create speculation or suspicion of a legally cognizable

cause of action; they must show *entitlement* to relief." *League of United Latin Am.*

*Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). "[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) (citation omitted).

B.    Plaintiff's procedural due process claim fails because he did not avail himself of the process provided and has not shown how he was prejudiced by the alleged deprivation of process.

Plaintiff's second cause of action alleges that Defendants violated his right to due process by depriving him of the right to bear arms without providing him with sufficient means to challenge the alleged deprivation. However, Plaintiff's claim fails as a matter of law.

A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without providing notice and an opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). To survive a motion to dismiss a procedural due process claim, a plaintiff must allege that (1) he or she possessed a protected life, liberty or property interest protected by the Due Process Clause; (2) he or she was deprived of that interest; and (3) the government did not provide him or her with due process of law to contest the deprivation. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir.

19

2006)).  "Where a pre-deprivation hearing is impracticable or quick action is necessary, a post-deprivation hearing may be adequate."  *Mator v. City of Ecorse*, 301 F. App'x 476, 479 (6th Cir. 2008) (citing *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994)).  Also, a court "need not address the merits of a [procedural due process] claim if there is no demonstration of prejudice."  *Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008) (citing *Warner v. Ashcroft*, 381 F.3d 534, 539 & n.1 (6th Cir. 2004)).  "To establish the requisite prejudice, [a plaintiff] must show that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations."  *Id*. at 549-50 (citing *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241-42 (6th Cir. 2007)).

Here, it is unclear on what basis Plaintiff is alleging that he was deprived of a protected liberty or property interest.  A fair reading of the facts as averred by Plaintiff in his complaint reveals that the prohibition on the FFL's ability to sell Plaintiff a firearm was delayed for three business days.  However, it is not clear whether Plaintiff contends that such a delay by itself allegedly violated a property or liberty interest, or whether his Fifth Amendment rights were allegedly violated because he was "constructively denied" the right to purchase a firearm.

In any event, assuming that Plaintiff has sufficiently alleged a violation of a protected property or liberty interest, his procedural due process claim fails as a matter of law.  First and foremost, Plaintiff's procedural due process claim fails

because he cannot show any prejudice from the alleged due process violation.  If Plaintiff is alleging that the three-day delay by itself violated his due process rights, he does not explain how a deprivation hearing or some other process was practically available to him within that very short period of time.  If, on the other hand, Plaintiff is alleging that he was constructively denied the right to purchase a firearm without first being afforded the process to which he was allegedly due, his claim fares no better.

First, Plaintiff in fact was not constructively denied the right to purchase a firearm.  Plaintiff does not aver that the Defendants instructed the FFL that Plaintiff was legally ineligible to purchase a firearm.  Moreover, after three business days had expired from when NICS provided the "delay" response to the FFL, there was no further delay or legal impediment on the proposed transfer.  To bring a valid procedural due process claim, a plaintiff must show that the alleged violation "led to a *substantially* different outcome from that which would have occurred in the absence of those violations."  *Id*.  (emphasis added).  Here, Plaintiff does not aver facts showing that, had he been granted some form of due process during the three-day delay by which he could demonstrate his entitlement to purchase a firearm, it would have led to a substantially different outcome.  To the contrary, at the end of three days, there was no legal impediment to Plaintiff

purchasing a firearm, which is presumably the very outcome he would have sought had he been given the process to which he alleges he was due.

Also notable is the fact that, for persons who are in fact denied the right to purchase a firearm based on information revealed in the background check, the applicable regulations provide ample process by which such a person may contest the information upon which the NICS decision is based.  In that situation, "[a]n individual may request the reason for the denial" from the agency, and the agency must respond within five business days with the reason for the denial.  28 C.F.R. § 25.10(a) & (b).  An individual may then apply to "the denying agency" to challenge the accuracy of the information, and if that is unsuccessful, the individual may apply for a correction of the record to the agency that provided the information upon which the denial was based.  28 C.F.R. § 25.10(c).  The individual can also direct his or her challenge directly to the FBI, which will investigate the information upon which the denial was based.  28 C.F.R. § 25.10(d).  Here, while Plaintiff alleges that he did in fact file an appeal, Compl. ¶ 59, he did not do so until 87 days after the alleged "delay" instruction was given by NICS to his proposed firearms purchase.  By that time, the "delay" response had long since expired and was no longer in effect, and there was no legal prohibition on the FFL completing the transfer.  Indeed, Plaintiff does not even allege that he returned to the store after three business days had expired to attempt

22

to complete the transfer.  For all of these reasons, Plaintiff fails to plead a basis on which relief may be granted pursuant to his Fifth Amendment due process claim.

C.    Plaintiff's substantive due process claim fails because he fails to make any allegation of governmental conduct that "shocks the conscience."

Plaintiff's third cause of action is that Defendants' actions in delaying his ability to complete the transaction for the pistol by three business days constitutes a violation of his substantive due process rights.  Compl. ¶¶ 106-116.  Specifically, Plaintiff argues that "[a]utomatically delaying gun sales to those whose names are located in the TSDB" is an arbitrary infringement upon a fundamental civil right. *Id*. ¶ 111.  However, Plaintiff's allegation falls short of clearing the high standard required for a plausible substantive due process claim.

To bring a substantive due process claim, a plaintiff must assert government conduct that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see also EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012) (rejecting substantive due process claim because "we simply cannot say that his behavior is so shocking as to shake the foundations of this country").  Behavior that meets this high standard includes behavior which "violates the 'decencies of civilized conduct.'"  *Lewis* at 846 (quoting *Rochin v. California*, 342 U.S. 165, 178 (1952)).  "Such conduct includes actions 'so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency.'"  *Range v. Douglas*, 763

23

F.3d 573, 589-90 (6th Cir. 2014) (quoting *Lewis*, 523 U.S. at 847). Behavior that meets this standard includes conduct that was "inspired by malice or sadism" or "brutal and inhumane abuse[s] of official power." *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987).

Here, Plaintiff's substantive due process claim fails because none of Plaintiff's allegations allege that Defendants engaged in the kind of egregious, gratuitous abuse of official power that would "shock the conscience." Plaintiff has alleged that Defendants issued a "delay" response to the NICS check when he attempted to purchase a pistol, and concedes that they took no further action to legally prohibit him from completing the transaction after three business days had expired after the response. The FBI's policy of issuing "delay" responses in situations in which the search of relevant databases uncovers a match, balanced with the short three business day time limit by which the FBI must either determine that the transferee is ineligible or allow the transaction to proceed, is hardly an act "inspired by malice or sadism" that "violates the decencies of civilized conduct." Indeed, at least one court has recently entertained a challenge to this FBI practice and discussed it in approving terms:

> The Brady Act provides the Government with the authority to access any search criteria that will enable it to determine whether a prospective purchaser is prohibited by the Gun Control Act from purchasing a firearm. Incorporating the TSDB into the NICS Background Check protocol is merely one method that the

24

Government may use to determine whether a prospective purchaser possesses a disqualifying attribute.

*Robinson v. Sessions*, --- F. App'x ----, 2018 WL 456725 at *2 n.3 (citing Pub L. No. 103-159, § 103(e)(1), 107 Stat. 1536, 1542 (1993)).

Defendants further note that very important governmental objectives are at stake. The administration of the background check procedure is designed to assist FFLs in identifying those prohibited from possessing firearms by 18 U.S.C. § 922, which itself furthers the governmental goal of preventing certain presumptively risky categories of people identified by statute from owning firearms. The Sixth Circuit has specifically held that "[t]hese interests are not only legitimate, they are compelling." *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 693 (6th Cir. 2016) (en banc) (citing *Washington v. Glucksberg*, 521 U.S. 702, 735 (1997); *Schall v. Martin*, 467 U.S. 253, 264 (1984)). Contrary to Plaintiff's claim that the FBI's practice "is not narrowly tailored to any governmental objective," there is a very strong objective in ensuring the NICS background check process is as accurate and effective as possible, and a delay of three business days at most for transferees whose NICS background check returned a hit in one of the three authorized databases is a reasonable, minimally burdensome way to further this objective.

D.    Plaintiff's equal protection claim fails because he has not pled facts demonstrating that he was treated any differently than other similarly-situated individuals.

Plaintiff's fourth cause of action alleges that the official capacity defendants violated his equal protection rights by treating him differently than similarly-situated prospective firearms purchasers by "constructively depriv[ing] Plaintiff of his fundamental right to bear arms" by issuing a "delay" response to the background check inquiry.  Compl. ¶¶ 117-131.  Plaintiff brings this claim pursuant to the Fifth Amendment, which has been judicially interpreted as extending the protections of the Fourteenth Amendment, which applies only to the acts of "states," to the federal government.  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citing *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954)).  To establish an equal protection claim, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.  *Advansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Plaintiff's equal protection claim fails because he has failed to plausibly allege that he was treated any differently from those similarly situated to him. While "courts do not require 'exact correlation' when evaluating whether parties are similarly situated, . . . they do demand 'relevant similarity.'"  *Ryan*, 174 F.

26

Supp. 3d at 976 (quoting *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th

Cir. 2012)).  The Supreme Court has explained that "[t]he Equal Protection Clause

does *not* forbid classifications.  It simply keeps governmental decisionmakers from

treating differently persons who are in *all relevant respects* alike." *Nordlinger v.

Hahn*, 505 U.S. 1, 10 (1992) (emphasis added).  "Law enforcement decisions are

highly discretionary." *Ryan*, 174 F. Supp. 3d at 978 (citing *Flowers v. City of

Minneapolis*, 558 F.3d 794, 799 (8th Cir. 2009)).

Here, Plaintiff asserts that he was treated differently from those similarly

situated because he alleges that the reason that the transfer was "delayed" was

because he was "placed on a No Fly List or a Watch List," Compl. ¶ 124, and that

had he not allegedly been on such a list, nothing else in his profile or criminal

history would have led to a delay of the transfer. *Id.* ¶¶ 123-125.  Plaintiff's

argument is premised on the allegation and assumption that those who are

identified as Known or Appropriately Suspected Terrorists (KST) in the database

maintained by the National Crime Identification Center (NCIC) are "similarly

situated" to those who are *not* so identified.  This is simply not the case.  The

relevant regulation requires NICS to "search the relevant databases (i.e., NICS

Index, NCIC, III) for *any* matching record," 28 C.F.R. § 25.6(f) (emphasis added),

and anticipates that NICS will issue a "delayed" response "if the NICS search finds

a record that requires more research to determine whether the prospective

27

transferee is disqualified from possessing a firearm." 28 C.F.R.

§ 25.6(c)(1)(iv)(B). Simply put, a person whose name appears in one of the

"relevant databases" is not "in all relevant respects" identical to a person whose

name does *not* appear in one of the "relevant databases." Plaintiff concedes that he

alleges that NICS issues a "delayed" response to everyone whose information is

identified in a similar "relevant database" by a search, and therefore does not

appear to be alleging that he was treated differently from others "whose names are

located in the TSDB." Compl. ¶ 111. Accordingly, because Plaintiff has not

alleged that he was treated any differently from those who are "in all relevant

respects" similarly situated to him, based on his own allegations, his equal

protection claim fails as a matter of law.

Furthermore, Plaintiff's equal protection claim fails because he has failed to

show that there is no reasonable fit between the alleged classification and an

important governmental interest. As the basis for his equal protection claim,

Plaintiff alleges that "Defendants constructively deprived Plaintiff of his

fundamental right to bear arms." Compl. ¶ 121. Plaintiff does not explain how a

mere three business day delay allegedly deprived him of his fundamental right to

bear arms, but in any event, Plaintiff has failed to aver facts showing that alleged

burden is not sufficiently related to a legitimate governmental interest to survive

scrutiny.

The Sixth Circuit in an *en banc* decision expressly held that, when reviewing claims alleging that a law or other government action violates the right to bear arms, the appropriate level of scrutiny is intermediate, not strict, scrutiny. *Tyler*, 837 F.3d at 690-92. That level of scrutiny only requires the government to show an objective that is "significant, substantial, or important," not compelling, and "a reasonable fit" between that objective and the law, regulation, or practice being challenged. *Id*. at 693 (citing *United States v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013)). The Sixth Circuit in *Tyler* also recognized that the government's interests in keeping firearms out of the hands of presumptively risky people as identified by 18 U.S.C. § 922 and applicable state law "are not only legitimate, they are compelling." *Id*. at 693 (citing *Washington¸* 521 U.S. at 735; *Schall*, 467 U.S. at 264). Here, the NICS system of providing "delay" responses when there is a match to the NCIC KST sub-file makes the background check process more effective and more accurate by providing a brief window of time for the FBI to verify that persons appearing in those databases are not barred from firearm ownership under federal or state law prior to allowing the transaction to proceed.

There is a "reasonable fit" between the "compelling" governmental objective recognized by the Sixth Circuit and the "delay" responses. The Sixth Circuit has explained that "[a]ll that is required 'is a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one

29

whose scope is in proportion to the interest served.'"  *Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 594 (6th Cir. 2003) (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)).  "Because a perfect fit is not required, the government need not prove that there is 'no burden whatsoever on [the claimant's] . . . right under the Second Amendment.'"  *Tyler*, 837 F.3d at 693 (quoting *United States v. Chapman*, 666 F.3d 220, 226 (4th Cir. 2012)).  Here, the only alleged burden on Plaintiff's right to firearm ownership by Defendants was a brief delay of three business days of the FFL's ability to legally sell Plaintiff the firearm in question.  Given that Plaintiff already lawfully owns three firearms, this delay only applied to one particular firearm and transaction, and at the end of three business days the FFL was legally able to complete the transfer, any burden imposed upon Plaintiff's right to bear arms was minimal.  *See id.* at 697 (noting that "temporal limitations" on certain curtailments on the ability to own firearms "has been a key consideration in finding that those regulations pass muster under heightened scrutiny") (citations omitted).  These "delays" make the NICS background check process more accurate and effective, and in doing so effectuate the important governmental interests of 18 U.S.C. § 922, while imposing only a minimal burden on those who are not barred from firearm ownership by federal or state law.  There is therefore a "reasonable fit" between this policy and important governmental objectives.

Because Plaintiff has failed to show that he was treated differently from similarly situated individuals and failed to show that there is not a reasonable fit between the challenged action and important governmental objectives, Plaintiff's equal protection claim should be dismissed.

E.    Plaintiff has not stated a claim under the APA because he fundamentally misrepresents the regulations at issue.

Plaintiff's fifth cause of action alleges that the official capacity Defendants violated the APA because "NICS records must be maintained for at least 88, if not 90, days."  Compl. ¶ 134.  According to Plaintiff, Defendants allegedly failed to maintain any records as of when he filed his appeal to contest "the deprivation of his Second Amendment rights" on September 18, 2017.  *Id.* ¶¶ 58, 137.  Plaintiff concedes that this was 87 days after the transaction was initiated and the gun store employee received a "delay" response.  *Id.* ¶ 61.

First and foremost, Plaintiff's APA claim fails because he either misunderstands or misrepresents the applicable rules and regulations governing the maintenance of NICS records.  While Plaintiff asserts that the regulations and policies require the FBI to maintain NICS records "for at least 88, if not 90, days," *id.* ¶ 134, the applicable regulation states that such records "will be destroyed after *not more than 90 days* from the date of inquiry."  28 C.F.R. § 25.9(b)(1)(iii) (emphasis added).  Similarly, the FBI's informational webpage on NICS appeals, which Plaintiff cites at Paragraph 59 of his Complaint, provides that "a delayed

31

transaction will be purged from the NICS *within 88 days* from creation."  FBI,

NICS Appeals, https://www.fbi.gov/services/cjis/nics/national-instant-criminal-

background-check-system-nics-appeals (last visited March 28, 2018) (emphasis

added).  The plain language of the regulation, and the FBI's informational site,

make it clear that these 88 and 90 day times are the *maximum* amount of time that

the FBI *may* maintain such records, and if such records are not deleted or destroyed

within 90 days, the FBI would be in violation of the applicable regulation.

Plaintiff attempts to essentially read this regulation and guidance to mean precisely

the opposite of their plain language, and to institute a *minimum* amount of time that

the FBI *must* maintain such records.  In fact, if the FBI had maintained any records

related to the "delay" response at the time Plaintiff filed his appeal, it would have

been within a few days of violating the applicable regulation.  Accordingly,

because Plaintiff has failed to cite to any law, rule, or regulation requiring agency

retention of the records in question at the time he sent his inquiry to the agency, his

APA claim fails as a matter of law.

    F.    <u>Plaintiff's cause of action for declaratory and injunctive relief fails because such relief is a remedy, not a separate cause of action.</u>

Plaintiff's sixth, and final, cause of action, seeks "declaratory and injunctive

relief against all Defendants" for the "constructive denial" of his rights as alleged

in the preceding paragraphs of the complaint.  Compl. ¶¶ 139-142.  However, this

is just a request for specific forms of relief without articulating any legal basis

separate from his other causes of action, and therefore should not be treated as an independent cause of action.

Pleading a specific requested form of relief as an independent cause of action is "properly dismissed" because "these requests are remedies and are not separate causes of action." *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 928-29 (6th Cir. 2013). While the Declaratory Judgment Act, which Plaintiff cites in his complaint as the basis for this cause of action, gives a court the authority to declare the legal rights of parties under certain circumstances, "[28 U.S.C.] § 2201 does not create an independent cause of action." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)); *see also Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("Nor does the Declaratory Judgment Act (DJA) provide a cause of action. It is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction. Rather, the availability of declaratory relief presupposes the existence of a judicially remediable right.") (citations omitted).

Here, Plaintiff's final cause of action merely broadly restates the basis for his previous causes of action, which he also expressly incorporates by reference. Compl. ¶ 139. Plaintiff asserts no new factual or legal basis for this claim for declaratory and injunctive relief. Accordingly, because declaratory and injunctive relief are forms of relief and are not independent causes of action, and Plaintiffs

33

have failed to allege a plausible claim for relief in any of its causes of action against official capacity Defendants, this cause of action should also be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss Plaintiff's Complaint.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General, Civil Division

JOHN R. TYLER
Assistant Director, Federal Programs Branch

*s/ Martin M. Tomlinson*
MARTIN M. TOMLINSON (SC Bar No. 76014)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 6134
Washington, D.C.  20530
Tel: (202) 353-4556
Fax: (202) 616-8470
E-mail:  martin.m.tomlinson@usdoj.gov

April 5, 2018                    Attorneys for Official Capacity Defendants

34

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2018, I electronically filed a copy of the foregoing Motion to Dismiss, and Memorandum and Points and Authorities in Support Thereof.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/Martin M. Tomlinson*
MARTIN M. TOMLINSON
April 5, 2018