UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHALID TURAANI,

Plaintiff,

v.

JEFFERSON BEAUREGARD SESSIONS, III,
in his official capacity, ET AL.,

Defendants.

_____/

Case No. 17-cv-14112

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

## OPINION AND ORDER GRANTING OFFICIAL-CAPACITY DEFENDANTS' MOTION TO DISMISS [10] AND DISMISSING COMPLAINT AS TO INDIVIDUAL-CAPACITY DEFENDANT WITHOUT PREJUDICE

## I.    Introduction

Plaintiff Khalid Turaani commenced this action on December 20, 2017.  Dkt. No. 1.  In the Complaint, he contends that the Defendants improperly delayed (by three days) his right to purchase a firearm and constructively denied him that right. *See id.*  The Defendants are an Unnamed FBI Agent, in his individual capacity, and the following individuals in their official capacity:  Jefferson B. Sessions, III, the Attorney General of the United States of America; Christopher A. Wray, the Director of the Federal Bureau of Investigation; Charles H. Kable, IV, the Director of the Terrorist Screening Center; and Thomas E. Brandon, the Deputy Director, Head of the Bureau of Alcohol, Tobacco, Firearms and Explosives.

Turaani asserts a defamation claim against the Unnamed FBI Agent in his individual capacity (Count I). He also maintains that the official-capacity Defendants violated his right to procedural due process under the Fifth Amendment (Count II); substantive due process under the Fifth Amendment (Count III); and equal protection under the Fifth Amendment (Count IV). Additionally, Turaani alleges that the official-capacity Defendants violated the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA"), (Count V), and he asserts a claim for injunctive and declaratory relief under 28 U.S.C. §§ 2201, 2202 (Count VI).

On April 5, 2018, the official-capacity Defendants moved to dismiss Counts II–VI of the Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. Dkt. No. 10. Turaani responded to the motion on April 26, 2018. Dkt. No. 12. The official-capacity Defendants replied in support of the motion on May 23, 2018. Dkt. No. 16.

Presently before the Court is the official-capacity Defendants' Motion to Dismiss Counts II–VI of the Complaint for Lack of Subject-Matter Jurisdiction and Failure to State a Claim [10]. The Court held a hearing on this motion on Monday, June 4, 2018. For the reasons detailed below, the Court will GRANT the official-capacity Defendants' Motion to Dismiss [10]. The Court lacks subject-matter jurisdiction over certain claims asserted by Turaani. The Court also concludes that Turaani has failed to state a claim on Counts II–VI. That is, the Court will dismiss

his claims regarding procedural due process (Count II), substantive due process (Count III), equal protection (Count IV), the Administrative Procedure Act (Count V), and injunctive and declaratory relief (Count VI).

Additionally, as the claims against the official-capacity Defendants will not survive the motion to dismiss and the individual-capacity Defendant (the Unnamed FBI Agent) has yet to receive service, the Court will DISMISS Count I WITHOUT PREJUDICE.

## II.    Background

Plaintiff Khalid Turaani is a United States citizen domiciled in Michigan.  Dkt. No. 1, p. 2 (Pg. ID 2).  He is the legal owner of three firearms, firearms which he purchased between 2000 and 2016.  *Id.* at p. 9 (Pg. ID 9).  This case concerns his inability to buy a fourth firearm, in 2017 and from Target Sports Orchard Lake in Michigan.

### A.    Firearm Background Check Procedures

On June 24, 2017, after discussing Turaani's request to purchase a firearm with an FBI agent, a clerk at Target Sports Orchard Lake refused to sell Turaani a gun.  *Id.* at p. 10 (Pg. ID 10).  By way of background, the Brady Act, 18 U.S.C. §§ 921 *et seq.*, requires that federal firearms licensees ("FFL") contact the National Instant Criminal Background Check System ("NICS") before selling a firearm to any person.  *Id.* at p. 5 (Pg. ID 5); *see generally* 28 C.F.R. § 25.1 *et seq.*  The FBI

manages the NICS, and in Michigan, FFLs directly contact the FBI with certain information about the potential purchaser.  Dkt. No. 1, p. 5 (Pg. ID 5); *see also* Dkt. No. 10, pp. 17–18 (Pg. ID 78–79).  Using that information, a search is run in certain databases, including the National Crime Identification Center ("NCIC").  Dkt. No. 10, p. 18 (Pg. ID 79).  The NCIC, in turn, includes a sub-file on Known or Appropriately Suspected Terrorists ("KST").  Dkt. No. 1, p. 12 (Pg. ID 12); *see also* Dkt. No. 10, p. 18 (Pg. ID 79).  Plaintiff alleges that, on the date of the firearm transaction, he was on a No Fly List or Watch List, and thus, he was on a KST list. Dkt. No. 1, p. 9 (Pg. ID 9).

When a person on a KST list initiates a firearm transaction, the background check results in a "delay" response.  28 C.F.R. § 25.6(c)(1); *see also* Dkt. No. 10, p. 19 (Pg. ID 80).  To be sure, residence on a KST list, standing alone, does not prohibit a person from legally owning a firearm.  *See* 18 U.S.C. § 922(g); *see also* Dkt. No. 10, p. 19 (Pg. ID 80).  Rather, a delay response suspends the transaction for three days while authorities further investigate the individual.  Dkt. No. 10, p. 19 (Pg. ID 80); *see also* 28 C.F.R. § 25.6(c)(1)(iv)(B).  A person may complete the firearm transaction if the NICS responds "proceed" or three days have passed from the delay response, whichever occurs first.  28 C.F.R. § 25.6(c)(1)(iv)(B).

Conversely, a "deny" response occurs where federal or state law prohibits a person from obtaining a firearm.  *See id.* at § 25.6(c)(1)(iv)(C); *see also* 18 U.S.C. §

922(g), (n).  If a person passes the background check, NICS will respond "proceed."

28 C.F.R. § 25.6(c)(1)(iv)(A).

> B.  Turaani's Experience at Target Sports Orchard Lake

As Target Sports Orchard Lake is an FFL, it contacted the FBI when Turaani

initiated the firearm transaction.  Dkt. No. 1, p. 10 (Pg. ID 10).  A store clerk began

a NICS background check on Turaani, including running Plaintiff's name through

the relevant databases.  *Id.*  Turaani maintains that an FBI agent then called the store

clerk, informed him that Turaani was the subject of an FBI investigation, and

instructed him to delay the transaction.  *Id.*  Following the FBI's directions, the store

clerk delayed the transaction.  *Id.* at pp. 10–11 (Pg. ID 10–11).  The FBI, however,

did not contact the store clerk again regarding Turaani's transaction and, of course,

three days have passed since Turaani attempted to purchase the firearm.  *Id.* at p. 10

(Pg. ID 10).  Therefore, Turaani may legally purchase the gun.  *See* 28 C.F.R. §

25.6(c)(1)(iv)(B).

But Turaani contends that he has not been able to purchase a gun from Target

Sports Orchard Lake.  He alleges that the store will not sell him a gun until the FBI

has informed the store that he never was, or is no longer, under investigation by the

FBI.  Dkt. No. 1, pp. 10–11 (Pg. ID 10–11).  He also asserts that because the store

clerk knows that he is or was under investigation by the FBI, this news will spread

throughout his Orchard Lake community and thereby damage his reputation. *Id.* at pp. 16–17 (Pg. ID 16–17).

## III.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to assess whether a plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[E]ven though the complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.' " *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

A court must construe the complaint in favor of a plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. *Twombly*, 550 U.S. at 570. But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). To survive a Rule 12(b)(6) motion, a plaintiff's pleading for relief must provide "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 553–54). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal citations and quotation marks omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679. (internal citations and quotation marks omitted).

## IV. Discussion

The Plaintiff raises five claims against the official-capacity Defendants. He contends that they violated his right to procedural due process (Count II), to substantive due process (Count III), and to equal protection of the laws (Count IV). He also maintains that their actions contravened the APA (Count V), and he raises an independent claim for injunctive and declaratory relief (Count VI). The Court will find that Plaintiff lacks standing to assert claims regarding certain harms. In

addition, the Court will hold that none of these counts will survive the Motion to Dismiss.

A.    Standing

Turaani principally claims that he has suffered harm as a result of both the three-day delay of his firearm purchase and the "constructive denial" of his Second Amendment right.  The Court will find that it has subject-matter jurisdiction over his claims regarding the three-day delay of his Second Amendment rights.  Conversely, the Court will conclude that it lacks subject-matter jurisdiction over Plaintiff's constructive denial claim.

"Federal courts," the Sixth Circuit has noted, "have constitutional authority to decide only 'cases' and 'controversies.' " *Crawford v. Dep't of Treasury*, 868 F.3d 438, 452 (6th Cir. 2017) (quoting U.S. CONST. art. III § 2) (citing *Muskrat v. United States*, 219 U.S. 346 (1911)).  "And there is no case or controversy if a plaintiff lacks standing to sue." *Duncan v. Muzyn*, 885 F.3d 422, 427 (6th Cir. 2018) (citing *Spokeo, Inc. v. Robins*, ––– U.S. ––––, 136 S. Ct. 1540, 1547 (2016)).  "A claimant bears the burden of establishing standing and must show it 'for each claim he seeks to press.' " *Hagy v. Demers & Adams*, 882 F.3d 616, 620 (6th Cir. 2018) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  If a claimant fails to establish standing, a court must dismiss the complaint under Federal Rule of Civil

Procedure 12(b)(1). *Lyshe v. Levy*, 854 F.3d 855, 858 (6th Cir. 2017) (citing *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 410–11 (6th Cir. 2013)).

"The 'irreducible constitutional minimum' of standing comprises three elements: (1) an injury-in-fact, which is (2) fairly traceable to the defendant's challenged conduct, and that in turn is (3) likely redressable by a favorable judicial decision." *Duncan*, 885 F.3d at 427 (quoting *Spokeo, Inc.*, 136 S. Ct. at 1547).

1.     Injury-in-fact

An injury-in-fact has two components, and Turaani has adequately alleged them both. First, "an injury-in-fact must be 'particularized,' meaning it 'affect[s] the plaintiff in a personal and individual way.' " *Id.* (second alteration in original) (quoting *Spokeo, Inc.*, 136 S. Ct. at 1548). Second, it "must be 'concrete,' meaning that it 'actually exist[s].' " *Id.* (alteration in original) (quoting *Spokeo, Inc.*, 136 S. Ct. at 1548).

Turaani has plausibly pleaded injury-in-fact for both the three-day delay and the constructive denial of his ability to purchase the firearm. These harms are particularized, as they impact his individual right to obtain a firearm. They are also concrete. He contends that the delay transpired and that the store clerk continues to deny his request to purchase the gun, although the mandated three-day delay has ended.

### 2. Causation

Not all of Turaani's alleged injuries are fairly traceable to Government conduct, however. Specifically, Turaani properly pleads this element for the three-day delay contentions, but does not for the constructive denial allegations. Accordingly, he has standing for claims involving the three-day delay, but he lacks standing for claims concerning the constructive denial.

"[A] plaintiff generally lacks standing to seek its redress," the Sixth Circuit has explained, "[w]hen a plaintiff's alleged injury is the result of 'the independent action of some third party not before the court[.]' " *Crawford*, 868 F.3d at 455 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976)) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Shearson v. Holder*, 725 F.3d 588, 592 (6th Cir. 2013); *Ammex, Inc. v. United States*, 367 F.3d 530, 533 (6th Cir. 2004)).

Turaani argues that his injuries are fairly traceable to Government conduct because the Government (1) delayed (by three days) his right to obtain a firearm and (2) constructively denied him the ability to purchase the gun. According to Turaani, the constructive denial occurred through the store clerk's decision to halt the transaction until the FBI has confirmed that Turaani is not, or never was, the subject of an FBI investigation. Dkt. No. 1, p. 19 (Pg. ID 19).

First, Turaani plausibly pleads standing for the three-day delay because he alleges that the FBI called the store clerk and instructed the clerk to delay the transaction. This instruction obligated the store clerk to pause the transaction until the FBI had responded "proceed" or "deny," or three days had passed from the delay response, whichever had occurred first. 28 C.F.R. § 25.6(c)(l)(iv)(B).

Yet his allegation that the Government "constructively denied" his right to purchase a firearm is not fairly traceable to Government conduct. Turaani maintains that no law prohibits him from obtaining a firearm and that, after the three-day delay, the law permitted him to complete the transaction. Therefore, the store clerk's voluntary and independent actions have caused him harm, not Government conduct. This finding is fatal to Turaani's constructive denial claim.

And as the Government argues, *Crawford* is illustrative. There, the relevant plaintiffs were current or former American citizens with international ties, largely residence abroad. 868 F.3d at 445. The plaintiffs sued several government actors. They alleged, among other things, that because of certain regulations which applied to them as United States taxpayers having foreign accounts, some foreign financial institutions ("FFI") had refused to do business with them or mandated that they disclose information not required by the disputed regulations. *Id.* at 456.

The Sixth Circuit acknowledged that these claims involved "indirect harm," which "is an injury caused to a plaintiff when the defendant's unlawful conduct

11

harms a third party who in turn causes the plaintiff's harm[.]" *Id.* at 456 (citations omitted). After categorizing the harm alleged, the *Crawford* panel held that these plaintiffs lacked standing. The court reasoned that "[s]everal of [p]laintiffs' alleged harms ar[ose] not from FFIs' acting under the command of [the contested regulations], but rather from the FFIs' voluntary choice to go above and beyond [the regulations]." *Id.* at 457. "FFIs may do so," the court explained, "by choosing not to do business with certain individuals, whether to protect their own interests in [regulatory] compliance or for some other reason." *Id.* at 457.

A similar situation has transpired here. Like the *Crawford* plaintiffs, Turaani pleads indirect harm. In particular, he maintains that the Government has "constructively denied" him the ability to purchase the firearm because the store clerk refuses to sell him the firearm. And here, as in *Crawford*, all agree that the law is not forcing the store clerk to refuse Turaani's request. In other words, there is no dispute that Turaani may legally possess a firearm and that he was legally able to complete the firearm transaction once three days had passed from the delay response. The "constructive denial," then, is solely the result of the store proceeding with an abundance of caution or, as the Sixth Circuit has stated, going "above and beyond" the law. Such "voluntary and independent" conduct by a third-party is insufficient to adequately allege standing. *Id.* at 457 (emphasis omitted) (citing *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

Accordingly, Turaani has not plausibly alleged that his inability to purchase a gun from the store clerk is fairly traceable to Government action. Conversely, Turaani has adequately pleaded that the three-delay in the firearm transaction is fairly traceable to the official-capacity Defendants' conduct.

### 3. Redressability

Finally, standing requires redressability, and Turaani has plausibly alleged this element for the alleged three-day delay. "A claimant satisfies Article III's redressability requirement by showing there is 'a likelihood that a court decision in the [claimant's] favor will redress the injury alleged.' " *United States v. Hall*, 877 F.3d 676, 682 (6th Cir. 2017) (quoting *Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, 56 F.3d 710, 715 (6th Cir. 1995)). Here, Turaani requests that the Court prevent the Government from delaying his firearm transaction. Therefore, an order from the Court would redress this harm.

In light of the above, Turaani has standing for claims involving the three-day delay of his firearm transaction. He lacks standing, however, to assert harm regarding the official-capacity Defendants' constructive denial of his right to purchase the gun.

### B. Procedural Due Process (Count II)

Plaintiff has not plausibly alleged a procedural due process claim. "Procedural due process imposes constraints on governmental decisions which

deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). And "the deprivation of property by state action is not itself unconstitutional[.]" *Id.* (internal quotation marks omitted) (quoting *Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir. 1995)). Rather, "what is unconstitutional is the deprivation of such an interest without due process of law." *Id.* (internal quotation marks omitted) (quoting *Kukulinsky*, 61 F.3d at 485).

Procedural due process "is flexible and calls for such procedural protections as the particular situation demands." *Unan v. Lyon*, 853 F.3d 279, 291 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Rosen v. Goetz*, 410 F.3d 919, 928 (6th Cir. 2005)). It is a function of "weigh[ing] the private interest at stake; 'the risk of an erroneous deprivation'; the government's interest, including the burden of imposing additional procedural requirements; and 'the probable value, if any, of additional or substitute procedural safeguards.' " *Id.* (quoting *Mathews*, 424 U.S. at 335). Finally, plaintiffs asserting procedural due process claims must also properly plead prejudice. *Shoemaker v. City of Howell*, 795 F.3d 553, 563 (6th Cir. 2015) (quoting *Graham v. Mukasey*, 519 F.3d 546, 549–50 (6th Cir. 2008)).

As an initial matter, Plaintiff's procedural due process claim fails because he has not adequately alleged prejudice. Prejudice requires well-pled allegations "that

the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations." *Id.* (quoting *Graham*, 519 F.3d at 549–50). First, because Turaani appeared on a No Fly List or Watch List, the FBI would have delayed the firearm transaction regardless of any alleged due process violations. Specifically, 28 C.F.R. § 25.8(g)(2) provides that "[i]n cases where potentially disqualifying information is found in response to an FFL query, the NICS Representative will provide a 'Delayed' response to the FFL." Turaani's status on the aforementioned-security lists constitutes "potentially disqualifying information." Indeed, Plaintiff acknowledges that all firearm transactions involving persons on such lists are delayed. Dkt. No. 1, p. 12 (Pg. ID 12).

Second, he fails to properly plead prejudice for the "constructive denial" claim. After the expiration of the three-day delay, the law permitted him to complete the firearm transaction. Therefore, as outlined in the Court's standing analysis, he does not assert prejudice from the official-capacity Defendants' conduct. Instead, he asserts prejudice from the store clerk's actions.

Beyond prejudice, the relevant considerations also indicate that Turaani has not adequately alleged a procedural due process violation.

1. Private Interest

Turaani's interests at stake are his Second Amendment right and his reputation. Dkt. No. 12-1, p. 16 (Pg. ID 128). Only the former interest warrants due process protection, however.

Due process, of course, protects Turaani's Second Amendment right to possess a gun. All agree that he may legally possess a firearm.

Due process does not recognize Turaani's interest in his reputation, however. Ordinarily, "[t]he Due Process Clause of the [Fifth] Amendment protects an individual's liberty interest in their 'reputation, good name, honor, and integrity.' " *Crosby v. Univ. of Ky.*, 863 F.3d 545, 555 (6th Cir. 2017) (quoting *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002)). But there are two limitations to this interest. First, "the alleged damage must be tied to '[s]ome alteration of a right or status 'previously recognized by state law.' " *Id.* (quoting *Quinn*, 293 F.3d at 319). Second, "[t]hat liberty interest is impugned when a state actor 'stigmatize[s]' an individual by means of 'voluntary, public dissemination of false information' about the individual." *Id.* (quoting *Quinn v. Shirey*, 293 F.3d at 320).

Turaani is correct that the FBI agent violated 28 C.F.R. § 25.8(g)(2) by disclosing that Turaani was the target of an FBI investigation. That provision mandates that the FBI "only provide a response of 'Proceed' or 'Delayed' (with

regard to the prospective firearms transfer)," and demands that the FBI "not provide the details of any record information about the transferee." *Id.*

But he fails on the second step. He does not plausibly allege that the FBI agent made a false statement. Indeed, the Complaint is absent of allegations indicating that was not under investigation by the FBI. Turaani instead maintains that the statement at issue "falsely created the impression that Plaintiff has committed or will be charged with a crime." Dkt. No. 1, p. 16 (Pg. ID 16). What is more, Turaani pleads facts suggesting that he was the target of an FBI investigation during the relevant period. In particular, he asserts that when he attempted to purchase the firearm, he was on a No Fly List, a Watch List, or both. *Id.* at pp. 9, 19 (Pg. ID 9, 19). Turaani, then, has not plausibly pleaded that the FBI agent made a false statement. Therefore, the Court will only recognize his Second Amendment interest.

### 2. Government Interest

The Government has a "compelling" interest in the regulation of firearms sales. *See Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 693 (6th Cir. 2016) (en banc) (citing *Washington v. Glucksberg*, 521 U.S. 702, 735 (1997); *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Schall v. Martin*, 467 U.S. 253, 264 (1984)).

### 3. Probable Value of Additional Safeguards

Additional safeguards would have little probable value for the three-day delay, the constructive denial, and the disclosure that he was the target of an FBI investigation. The three-day delay complied with federal regulations and did not violate his procedural due process rights. There is no dispute that Plaintiff was on a Watch List or No Fly List, and that inclusion on such lists triggers a delay response. *See* 28 C.F.R. § 25.8(g)(2); *see also* Dkt. No. 1, p. 12 (Pg. ID 12). Thus, additional safeguards would not be particularly valuable.

Additional safeguards would likewise have little to no value for the constructive denial claim: The official-capacity Defendants are not preventing him from completing the firearm transaction. The store clerk, rather, is the reason he has not purchased the firearm.

Lastly, additional safeguards for the allegedly improper disclosure would have minimal probable value. The rule prohibiting such disclosures is clear and the FBI takes precautions to prevent these occurrences, including through limiting NICS access "to the initiation of a NICS background check in connection with the proposed transfer of a firearm" and having the FBI "periodically monitor telephone inquiries to ensure proper use of the [NICS] system." 28 C.F.R. § 25.8(g)(1), (3).

In light of the above, Turaani's procedural due process claim will not survive the motion to dismiss.

C. Substantive Due Process (Count III)

Plaintiff asserts a substantive due process claim, which is best understood as a Second Amendment challenge to the three-day delay of the firearm transaction. This claim is unmeritorious.

"Substantive due process is 'the doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.' " *In re City of Detroit, Mich.*, 841 F.3d 684, 699 (6th Cir. 2016) (quoting *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014)). "The class of interests it protects," the Sixth Circuit has explained, "is 'narrower than those protected by procedural due process.' " *Id.* (quoting *Range*, 763 F.3d at 588 n.6). Indeed, "[s]ubstantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (internal quotation marks omitted) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012)). The fundamental rights contemplated by substantive due process "are 'implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.' " *Id.* at 700 (quoting *Glucksberg*, 521 U.S. at 721). "Substantive-due-process claims are 'loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience.' " *Doe v. Miami Univ.*, 882 F.3d 579, 597 (6th Cir. 2018)

(quoting *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)).

Turaani's claims largely relate to the former. He asserts that the Government infringed upon his Second Amendment rights, and all agree that substantive due process protects Second Amendment rights. The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. And it secures "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Tyler*, 837 F.3d at 685 (internal quotation marks omitted) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).

In this Circuit, courts conduct a two-part analysis when deciding Second Amendment challenges. *See United States v. Greeno*, 679 F.3d 510 (6th Cir. 2012). "The first step 'asks whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood.' " *Tyler*, 837 F.3d at 685 (quoting *Greeno*, 679 F.3d at 518). Here, because all agree that Turaani may legally possess a firearm, there is no dispute that the burden that 28 C.F.R. § 25.6(c)(l)(iv)(B) imposes on Turaani falls within the scope of the Second Amendment.

The next step in the *Greeno* framework requires that courts "ascertain the appropriate level of scrutiny and examine the 'strength of the government's

justification for restricting or regulating the exercise of Second Amendment rights.' " *Tyler*, 837 F.3d at 686 (quoting *Greeno*, 679 F.3d at 518). Turaani argues that strict scrutiny applies to his challenge, whereas the Government counters that intermediate scrutiny is appropriate.

The Court will find that the Government takes the better view. Indeed, the Plaintiff cites to no authority showing that courts have applied strict scrutiny to a Second Amendment challenge. Numerous courts, on the other hand, have applied intermediate scrutiny to Second Amendment challenges. *See, e.g.*, *Stimmel v. Sessions*, 879 F.3d 198, 206 (6th Cir. 2018) (rejecting plaintiff's request to apply strict scrutiny because "his position runs counter to the clear preference of most appellate courts for applying intermediate scrutiny to [18 U.S.C.] § 922(g) challenges.").

To be sure, the appropriate level of scrutiny turns on "(1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right." *Tyler*, 837 F.3d at 690 (internal quotation marks omitted) (quoting *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013)) (citing *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010)). 28 C.F.R. § 25.6(c)(l)(iv)(B), as applied here, comes close to the core Second Amendment right. *See id.* at 685 (citing *Heller*, 554 U.S. at 635). Yet "[t]he risk inherent in firearms and other weapons distinguishes the Second Amendment right from other

fundamental rights that have been held to be evaluated under a strict scrutiny test."

*Id.* at 691 (internal quotation marks omitted) (quoting *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1126 (10th Cir. 2015)).

What is more, this regulation barely burdens Turaani's Second Amendment right. Unlike laws that prohibit gun ownership and thereby impose a substantial burden on the right, this regulation simply required Turaani to wait three days before completing the firearm transaction. *Id.* at 692 (concluding a law that prohibited gun ownership by certain individuals placed a substantial burden on those persons' Second Amendment rights). This minimal burden suggests that it would be unwise for the Court to apply strict scrutiny to the regulation contested here.[1]

The Court will apply intermediate scrutiny, and in doing so, will determine that 28 C.F.R. § 25.6(c)(l)(iv)(B) does not violate Plaintiff's Second Amendment right. "While the vocabulary of intermediate scrutiny varies across courts, 'all forms of the standard require (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective.' " *Id.* at 693 (quoting *Chovan*, 735 F.3d at 1139; citing

---

[1] To the extent Plaintiff contends that this regulation violates his substantive due process rights because it shocks the conscience, the minimal burden imposed by this regulation belies his argument. Typically, behavior that shocks the conscience is an act " 'intended to injure' without any justifiable government interest[.]" *See Range*, 763 F.3d at 590 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998)). The circumstances here are inapposite.

*Clark v. Jeter*, 486 U.S. 456, 461 (1988)). "All that is required is a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Id.* (internal quotation marks omitted) (quoting *Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 594 (6th Cir. 2003)).

As noted in Part IV, Section B.2 of this decision, the Government has a compelling interest in regulating gun sales. *See id.* And here, there is a reasonable fit between 28 C.F.R. § 25.8 and the Government interest in regulating firearm sales. The Government uses the three-day delay to investigate the potentially disqualifying information identified in the NICS. Therefore, this regulation reasonably fits the Government's objective of ensuring that unqualified persons do not obtain guns.

For the above-stated reasons, the Court is unpersuaded by Turaani's Second Amendment and substantive due process arguments contesting 28 C.F.R. § 25.8.

D.     Equal Protection (Count IV)

Turaani's equal protection claim will also not survive the motion to dismiss. Equal protection challenges regarding the federal government, and therefore asserted under the Fifth Amendment, are subject to the same standard as challenges to state action, which relate to the Fourteenth Amendment. *Stimmel*, 879 F.3d at 212 (citing *United States v. Angel*, 355 F.3d 462, 471 (6th Cir. 2004)). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the

plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Id.* (internal quotation marks omitted) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). "In determining whether individuals are similarly situated," the Sixth Circuit has instructed that "a court should not demand exact correlation, but should instead seek relevant similarity." *Id.* (internal quotation marks omitted) (quoting *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012)).

Turaani is of Palestinian origin and is a practicing Muslim. Relying on these characteristics, he contends that he is similarly situated to other Palestinians and practicing Muslims. The Court is unconvinced.

As the official-capacity Defendants argue, the relevant similarity here is residence on a national security list, e.g. a Watch List or No Fly List. *See* Dkt. No. 10, pp. 40–41 (Pg. ID 101–02). The Complaint lacks facts indicating that the Government has treated him differently than it has treated other individuals on those lists. For example, Turaani concedes that when individuals on such lists initiate firearm transactions, their transactions are "automatically delayed." Dkt. No. 1, p. 12 (Pg. ID 12). His failure to plead specific facts suggesting that the Government has treated him differently than other individuals on national security lists is fatal to his equal protection claim. *See, e.g.*, *Hall v. Callahan*, 727 F.3d 450, 457 (6th Cir.

2013) (dismissing equal protection claim because plaintiffs failed to identify similarly situated groups and to explain how the contested statute treated them differently than similarly situated individuals).  Consequently, the Court will grant the official-capacity Defendants' Motion to Dismiss on Turaani's equal protection claim.

E.     APA (Count V)

According to Turaani, the official-capacity Defendants violated the APA because they "either deleted the [transaction] records too early or wrote that the NTN was invalid in order to reach the time period when records may be purged."  Dkt. No. 1, p. 14 (Pg. ID 14).  Additionally, Plaintiff alleges that he appealed the "constructive denial" of the transaction eight-seven days after it occurred.  These arguments are unavailing.

"The APA authorizes aggrieved individuals to seek judicial review of agency decisions, subject to certain conditions."  *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 632 (6th Cir. 2016) (citing 5 U.S.C. § 702).  And it "requires [courts] to uphold agency action unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *ECM BioFilms, Inc. v. Fed. Trade Comm'n*, 851 F.3d 599, 612 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 711 F.3d 662, 667 (6th Cir. 2013)).

Turaani maintains that an APA violation occurred here because the transaction files were not preserved for eight-seven days after he had attempted to purchase the firearm. But taking his allegations as true, as the Court must, the Government's conduct was not unlawful. Under 28 C.F.R. § 25.9(b)(ii), "NICS Audit Log records relating to transactions in an open status, except the NTN and date, will be destroyed after not more than 90 days from the date of inquiry."[2] In sum, ninety days is the outer limit at which the NICS may preserve a transaction file. The deletion of his audit log records after eighty-seven days, then, was not unlawful.

To the extent that the Government failed to keep a record of his NTN and date, as this provision requires, Turaani has plausibly alleged that the Government erred. But any error was harmless, given that the FBI appropriately deleted the rest of his file and the NTN and date offer relatively little insight into the transaction here. *See ECM BioFilms, Inc.*, 851 F.3d at 612 (noting that courts "appl[y] a harmless-error rule to APA cases, such that a mistake that has no bearing on the ultimate decision or causes no prejudice shall not be the basis for reversing an agency's

---

[2] Turaani's transaction was under "open status" as the FBI directed the store clerk to delay the transaction and never followed up with a "proceed" or "deny" response. 28 C.F.R. § 25.2 defines "open" as "those non-canceled transactions where the FFL has not been notified of the final determination." The section continues, in relevant part, that "[a]n 'open' response does not prohibit an FFL from transferring a firearm after three business days have elapsed since the FFL provided to the system the identifying information about the prospective transferee." *Id.*

determination." (citing *Sierra Club v. Slater*, 120 F.3d 623, 637 (6th Cir. 1997);

*Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654–55 (6th Cir. 2009))).

Therefore, Turaani has not adequately pleaded a violation of the APA.

F.     Injunctive and Declaratory Relief (Count VI)

In his last count, Turaani requests injunctive and declaratory relief as an independent cause of action. Dkt. No. 1, pp. 27–28 (Pg. ID 27–28). Perhaps realizing that injunctive and declaratory relief are remedies and not independent causes of action, Turaani retracts this count in his response to the Motion to Dismiss. Dkt. No. 12-1, p. 25 (Pg. ID 137). He is right to do so. *See Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013) (rejecting claims for quiet title and injunctive relief because "these requests are remedies and are not separate causes of action."). Thus, the Court will grant the official-capacity Defendants' Motion to Dismiss the count for injunctive and declaratory relief.

V.    **Conclusion**

The Plaintiff raises several claims against the official-capacity Defendants. He maintains that they abridged his right to procedural due process (Count II), substantive due process (Count III), and equal protection (Count IV). Turaani also argues that the official-capacity Defendants failed to comply with the APA (Count V), and he asserts as a standalone count a claim for injunctive and declaratory relief (Count VI). In response, the Government moved to dismiss the complaint for lack

of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted [10]. The Court will GRANT the Motion to Dismiss [10]. In particular, the Court will find that Plaintiff lacks standing to raise claims regarding the constructive denial of his rights. Even though he has standing for other allegations of harm, his claims will not survive the Motion to Dismiss. On Counts II–VI of the Complaint, the Court will conclude that Turaani has failed to state a claim upon which relief may be granted. Given this finding and the lack of service as to the individual-capacity Defendant (the Unnamed FBI Agent), the Court will DISMISS Count I WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: June 7, 2018

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 7, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk

28