UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHALID TURAANI,

Plaintiff,

v.

JEFFERSON BEAUREGARD SESSIONS, III,
in his official capacity, ET AL.,

Defendants.
_____/

Case No. 17-cv-14112

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

## OPINION AND ORDER DENYING PLAINTIFF'S MOTIONS FOR RECONSIDERATION [25] AND FOR RELIEF FROM JUDGMENT [26]

**I.  Introduction**

Plaintiff Khalid Turaani commenced this action on December 20, 2017, asserting several claims regarding his attempted purchase of a firearm. Dkt. No. 1. Turaani asserted a *Bivens* claim for defamation against an Unnamed FBI Agent (Count I). *See id.* He also raised constitutional and statutory claims against several Defendants in their official-capacity: Jefferson B. Sessions, III, the Attorney General of the United States of America; Christopher A. Wray, the Director of the Federal Bureau of Investigation; Charles H. Kable, IV, the Director of the Terrorist Screening Center; and Thomas E. Brandon, the Deputy Director, Head of the Bureau of Alcohol, Tobacco, Firearms and Explosives. *See id.* In pertinent part, these

claims were for Fifth Amendment violations of the right to procedural due process (Count II); the right to substantive due process (Count III); and the right to equal protection (Count IV).[1]

Then, on April 5, 2018, the official-capacity Defendants filed a motion to dismiss the claims asserted against them. Dkt. No. 11. On June 7, 2018, after a hearing on the motion, the Court issued an Opinion and Order dismissing the claims against the official-capacity Defendants with prejudice, and dismissing the claim against the individual-capacity Defendant without prejudice. *See* Dkt. No. 19. The Court entered a judgment accordingly. *See* Dkt. No. 20.

Since that judgment, Turaani has filed two motions disputing the Court's decision. First, he moved for reconsideration on June 29, 2018, and second, he moved for relief from judgment on August 15, 2018. *See* Dkt. Nos. 25, 26. The Court has not ordered a response to either motion.

Presently before the Court are Turaani's Motions for Reconsideration [25] and for Relief from Judgment [26]. For the reasons detailed herein, the Court will DENY Turaani's Motion for Reconsideration [25] and his Motion for Relief from Judgment [26].

---

[1] In his motions contesting the Court's dismissal of the complaint, Turaani does not challenge the Court's dismissal of his claim under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (Count V), or his claim for injunctive and declaratory relief (Count VI).

2

## II. Background

The Court will presume familiarity with the underlying facts in the complaint, but will detail the new evidence presented by Turaani. This new evidence is essentially a repeat of the circumstances described in the complaint. In his motion for relief from judgment, Turaani explains that another federal firearms licensee ("FFL") refused to sell him a gun because of statements made by an FBI agent. Dkt. No. 26, p. 6 (Pg. ID 248). Specifically, Turaani attempted to purchase a firearm on August 5, 2018 and, after the FFL ran Turaani's name through the National Instant Criminal Background Check System ("NICS"), the transaction was delayed. *Id.* The FFL initially said that he would sell Turaani the firearm in three days, subject to his receipt of a denial response prior to the expiration of the three day waiting period. *See id.*

Yet on the following day, August 6, 2018, an FBI agent purportedly met with the FFL in person regarding Turaani's attempted firearm purchase. *See id.* According to Turaani, the agent asked the FFL whether a certain person was with Turaani during the attempted firearm transaction. *Id.* at pp. 6–7 (Pg. ID 248–49). Turaani next alleges that the FFL refused to sell him the firearm because of the visit from the FBI agent. *Id.*

## III. Discussion

Turaani has moved for reconsideration of the Court's Opinion and Order on the official-capacity Defendants' motion to dismiss. Dkt. No. 25. He has also moved for relief from judgment based on new evidence. Dkt. No. 26. The Court will deny both motions. The Court will also hold that the allegations in his motion for relief from judgment are materially indistinguishable from those raised in his complaint. Thus, the Court will deny both motions on the same grounds.

### A. Motion for Reconsideration [25] and Motion for Relief from Judgment [26]

Neither Turaani's motion for reconsideration nor his motion for relief from judgment has merit. Ordinarily, a court in this district "will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the [c]ourt, either expressly or by reasonable implication." E.D. MICH. L.R. 7.1(h)(3). Instead, "[a] movant must not only demonstrate a palpable defect by which [a] [c]ourt and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." *Id.* A movant can make this showing through "present[ing] newly discovered evidence or clearly establish[ing] a manifest error of law." *See D.E. v. John Doe*, 834 F.3d 723, 728 (6th Cir. 2016) (citing *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (discussing standard of motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e))).

4

Turaani has also filed a motion under Federal Rule of Civil Procedure 60(b)(2), arguing that newly discovered evidence warrants relief from the judgment. Under that rule, "[a] movant needs to show by clear and convincing evidence (1) that it exercised due diligence to obtain the evidence and (2) that the evidence is material, i.e., would have clearly resulted in a different outcome." *Luna v. Bell*, 887 F.3d 290, 294 (6th Cir. 2018) (citing *JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 585 (6th Cir. 2014)).

1. Procedural Due Process Claim (Count II)

Turaani argues that current safeguards are insufficient to prevent FBI agents from violating 28 C.F.R. § 25.8(g) by disclosing that he was subject to a Government investigation.[2] Therefore, Turaani says, the Court made a manifest legal error in determining that he had failed to adequately allege a procedural due process claim. Turaani, in particular, finds fault with the Court's conclusion that additional safeguards would have little probable value, given that the Court also concluded that he had properly pled a violation of 28 C.F.R. § 25.8(g).

The Court's holding does not reflect a manifest error of law, however. A plausibly pleaded violation of 28 C.F.R. § 25.8(g), standing alone, is insufficient to

---

[2] Under 28 C.F.R. § 25.8(g)(2), when an FFL requests the status of an NICS background check, "[t]he NICS Representative will only provide a response of 'Proceed' or 'Delayed' (with regard to the prospective firearms transfer), and will not provide the details of any record information about the transferee."

5

survive a motion to dismiss on an Equal Protection Clause claim. *See Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017) (internal citations omitted). In addition to adequately alleging a violation, a complaint must contain well-pleaded facts that the violation occurred without the due process of law. *Id.*

This, Turaani has not done. The current safeguards include the FBI's monitoring of phone lines and the narrowing of access to the NICS database. *See* 28 C.F.R. § 25.8(g)(1), (3). Turaani has not plausibly pleaded that additional safeguards would reduce the likelihood that the FBI agent would have said that Turaani was under FBI investigation. The Court, therefore, did not make a manifest error of law in determining that Turaani has failed to adequately allege a procedural due process claim.

2. Substantive Due Process Claim (Count III)

The Court construed Turaani's substantive due process claim as a Second Amendment claim. Here, Turaani first unconvincingly contends that the Court erred in concluding that the relevant harm was waiting seventy-two hours to purchase the firearm and that this harm "barely burdened" him. Dkt. No. 25-1, p. 10 (Pg. ID 235). Turaani continues that the Court should have accepted as harm the store clerk's continued refusal to complete this firearm transaction.

The Court disagrees and does so for the same reasons detailed in its finding that Turaani lacks standing under his "constructive denial" theory. In both

"constructive denials" of his firearm transactions, there was no legal impediment to Turaani's completion of the transaction after a seventy-two hour delay. When an FFL goes above and beyond the legal requirements, Turaani cannot attribute that FFL's conduct to the Government, as he has repeatedly tried to do in this litigation. *See Crawford v. Dep't of Treasury*, 868 F.3d 438, 455–57 (6th Cir. 2017). Therefore, the Court did not err in determining that the harm here should not capture the "constructive denials" of his right to purchase a firearm.

Second, Turaani vigorously argues that the Court should have applied strict scrutiny to this claim, as opposed to intermediate scrutiny. Turaani also disputes the Court's application of intermediate scrutiny. In ruling on the motion to dismiss, the Court made two relevant findings. First, the Court held that the Government's objective in regulating gun sales was "significant, substantial, or important." *See Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 693 (6th Cir. 2016) (internal quotation marks and citations omitted). Second, it determined that there was "a reasonable fit" between the three day delay and the Government's objective. *See id.* Therefore, the Court found that the Government did not violate the Second Amendment when it delayed Turaani's firearm transaction for three days because of his purported presence on a national security list.

Contrary to Turaani's contentions, intermediate scrutiny is the appropriate standard of review for his Second Amendment challenge. *See id.* (noting that

7

"[courts] should caution against imposing too high a burden on the government to justify its gun safety regulations[,]" as "[t]he risk inherent in firearms and other weapons distinguishes the Second Amendment right from other fundamental rights that have been held to be evaluated under a strict scrutiny test." (internal quotation marks and citations omitted))).

But the Court will clarify that, had it applied strict scrutiny, Turaani still would have failed to state a Second Amendment claim. Strict scrutiny requires that a court invalidate a law unless that law is "narrowly tailored to a compelling governmental interest." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000)). And the Government's seventy-two hour delay of his firearm transaction is narrowly tailored to its compelling interests in regulating firearm sales and public safety. *See Tyler*, 837 F.3d at 693 (indicating that the Government has a "compelling" interest in the public's safety) (collecting cases).

There is also not a manifest error in the Court's analysis of the applicable standard of review—on the motion to dismiss or here. The specific regulation at issue here provides that a delay is proper where "potentially disqualifying information" is discovered during an NICS background check. 28 C.F.R. § 25.8(g)(2). Turaani pleads that the Government treats a person's presence on a

Watch List, No Fly List, or both as "potentially disqualifying information."[3] Dkt. No. 25-1, p. 4 (Pg. ID 229). Turaani argues, however, that a person's presence on those lists should not constitute potentially disqualifying information. *Id*. In support of this position, he observes that status on a national security list does not prohibit a person from legally obtaining a firearm. *Id*. at pp. 4–5 (Pg. ID 229–30).

Yet in making this assertion, he wrongly equates potentially disqualifying information with information proving that a person cannot lawfully own a firearm. There is no requirement that "potentially disqualifying information" establish in the first instance that a person cannot lawfully possess a gun. Indeed, the point of the delay is to ascertain whether information exists which demonstrates that an applicant cannot lawfully possess a firearm.

What is more, his reliance on *Robinson v. Sessions*, 721 F. App'x 20 (2d Cir. 2018), is misplaced. The plaintiffs there lacked standing to challenge whether the Government could search the terrorist screening database when conducting NICS background checks. *Id.* at 22–23. They lacked standing because none of them had

---

[3] Turaani believes he was on one or both of those national security lists, and that the Court mistakenly concluded that the parties had agreed on that issue. Dkt. No. 25-1. The Court acknowledges that the Government, at oral argument, declined to confirm or deny whether Turaani was or is on those lists. Yet the legal standard on a motion to dismiss requires that the Court accept Turaani's factual allegations as true, irrespective of the Government's contentions. Therefore, the Government's decision not to comment on whether Turaani has ever appeared on a national security list does not disturb the Court's resolution of the motion to dismiss.

adequately alleged that they had suffered an injury in fact. *Id.* In explaining its holding, the *Robinson* court outlined several facts indicating that the Government can delay a transaction based on a person's listing in a national security database. *Id.* at 24 & n.3. In particular, the Second Circuit noted that "[t]he Brady Act provides the Government with the authority to access any search criteria that will enable it to determine whether a prospective purchaser is prohibited by the Gun Control Act from purchasing a firearm." *Id.* at 24 n.3 (citing Brady Act, Pub. L. No. 103-159, § 103(e)(1), 107 Stat. 1536, 1542 (1993)). "Incorporating the [terrorist screening database] into the NICS Background Check protocol," the Second Circuit noted, "is merely one method that the Government may use to determine whether a prospective purchaser possesses a disqualifying attribute." *Id.*

The opinion in *Robinson* demonstrates that the Government can search the terrorist screening database during the NICS background check. Separately, a person's listing on a No Fly List or Watch List directly relates to security concerns. This Court will thus conclude that appearing on a No Fly List or Watch List is "potentially disqualifying information," allowing the Government to delay a person's firearm transaction. Indeed, what is the purpose of searching the terrorist screening database if not to find a person's name and to then further investigate whether he or she can legally purchase a firearm? And as the Government must decide within seventy-two hours whether this person can lawfully possess a firearm,

the delay is narrowly tailored to the Government's compelling interest. Accordingly, the Court will deny Turaani's motion for reconsideration and his motion for relief from judgment with respect to his substantive due process claim.

### 3. Equal Protection Claim (Count IV)

Finally, Turaani argues that there was a manifest error of law in the Court's analysis of his Equal Protection Clause claim. Dkt. No. 25-1, p. 9 (Pg. ID 234). He maintains that the Court wrongly concluded that he was similarly situated to individuals on national security lists. He contends that the Court should have instead compared the Government's treatment of him to its treatment of persons who do not appear on a security list and who do not have any characteristics which disqualify them from owning a gun.

This argument, too, lacks merit. Turaani has asserted that he was on one or more national security lists. Dkt. No. 1, pp. 2, 9, 19 (Pg. ID 2, 9, 19). That assertion, if true, indicates that he was not similarly situated to persons who were not on a national security list. Consequently, the Court has not mischaracterized Turaani's allegations; it has instead rejected Turaani's legal conclusion regarding the appropriate group for comparison under the Equal Protection Clause. The Court's June 7, 2018 Opinion and Order, then, does not contain a manifest legal error regarding his equal protection claim.

## IV. Conclusion

On June 7, 2018, the Court granted the official-capacity Defendants' motion to dismiss. *See* Dkt. No. 19. In response, Turaani has moved for reconsideration and for relief from judgment. Dkt. Nos. 25, 26. In light of the above, the Court will DENY Turaani's Motion for Reconsideration [25] and his Motion for Relief from Judgment [26].

IT IS SO ORDERED.

Dated: August 20, 2018                                   /s/Gershwin A. Drain
                                                        GERSHWIN A. DRAIN
                                                        United States District Judge

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 20, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk